**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

NEW MEXICO ONCOLOGY AND
HEMATOLOGY CONSULTANTS, Ltd.,

        Plaintiff,                         No. 1:12-cv-00526 MV/GBW

v.

PRESBYTERIAN HEALTHCARE SERVICES,
and PRESBYTERIAN NETWORK, INC.

        Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION**
**TO STAY INITIAL DISCLOSURES AND DISCOVERY**

    The Court should deny Presbyterian's Motion to Stay Initial Disclosures and Discovery (the "Motion") (doc. 34) because:

    a.    Presbyterian failed to present any evidence or proof that a blanket stay of discovery is appropriate;

    b.    The blanket stay Presbyterian is requesting would needlessly delay discovery and would ultimately make discovery more expensive and burdensome; and

    c.    The proposed stay will prejudice New Mexico Oncology and Hematology Consultant's ("NMOHC") ability to obtain many types of electronic information.

Presbyterian's Motion is nothing more than an attempt to stop any and all discovery for no other reason than its having filed a motion to dismiss. NMOHC, for example, has not yet served any discovery requests on Presbyterian. The only action by NMOHC that preceded Presbyterian's Motion was NMOHC's request for a Rule 26(f) conference. Rather than meet and confer with NMOHC about sequencing and/or prioritizing

discovery, Presbyterian asked for a blanket stay of all discovery until the Court rules on its Rule 12(b)(6) Motion to Dismiss (doc. 33).

The affidavit Presbyterian has submitted to support its request for a stay is a red herring. While Presbyterian claims any discovery will impose unreasonable burdens on defendants, Presbyterian refused to sit down for a Rule 26(f) conference in order to discuss discovery issues with NMOHC. Presbyterian's claims about burdensome discovery are entirely speculative. Indeed, Presbyterian refusal to discuss discovery in a Rule 26(f) conference is essential to its suggestion that discovery will immediately become extremely burdensome.

Finally, Presbyterian's affidavit is entirely silent on the delays, additional costs and prejudice to NMOHC that a blank stay on discovery will cause. Many types of electronic records may get deleted or become difficult to access over time. It is critical that discovery with respect to electronically stored data commence immediately.

For these reasons, and those discussed below, NMOHC respectfully requests that the Motion be denied.

## Argument

Presbyterian fails to meet the heavy burden required to obtain an extraordinary blanket protective order staying all discovery. Under Fed. R. Civ. P. 26(c)(1), the Court has broad discretion to manage discovery to "facilitate prompt and efficient resolution of the lawsuit," *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998), and protective orders are granted only upon a showing of "good cause," which requires a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (internal citations omitted).

A presumption exists that discovery should proceed despite the filing of a motion to dismiss. *See, e.g., Skellercup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-601 (C.D. Cal. 1995) ("[h]ad the federal rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect; [i]n fact, such a notion is directly at odds with the need for expeditious resolution of litigation.") (internal citations and quotations omitted).   In ruling on a motion to stay, the Tenth Circuit has stated that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Com'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (internal citations and quotations omitted).   Because "stays of the normal proceedings of a court matter should be the exception rather than the rule," stays of discovery are generally disfavored.   *Christou v. Beatport*, LLC, 2011 WL 65037, * 1 (D. Colo. 2011) (unpublished) (citing *Commodity Futures Trading Com'n*, 713 F.2d at 1484).[1]

A.      **The Five Factor Analysis**

In deciding whether the moving party (Presbyterian) has met its heavy burden, courts look to five factors: (1) the interests of the plaintiff in proceeding expeditiously with discovery and the potential prejudice a delay could impose on the plaintiff; (2) the burden proceeding with discovery would impose on the defendant; (3) the convenience to the Court of staying discovery; (4) the interest of nonparties in either staying or

---

[1] *See also Feldman v. Flood*, 176 F.R.D. 651, 652-53 (M.D. Fla. 1997) (motions to stay are not favored because when discovery is delayed or prolonged, it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems; *New England Carpenters Health*, 2013 WL 690613 at *2 (citing *Coss v. Playtex Prods.*, LLC, 2009 WL 1455358, at *1 ("[a]lthough stays on discovery are sometimes appropriate, this court disfavors them because they bring resolution of the dispute to a standstill."); *Niederhoffer Intermarket Fund L.P. v. Chicago Merchantile*, 1999 WL 731773, *1 (N.D. Ill. 1999) (unpublished) ("[w]here the Court finds interference in the discovery is unlikely to significantly expedite the litigation, and may actually slow it down, it will decline to interfere") (internal quotations and citations omitted).

proceeding with discovery; and (5) the public interest in either staying or proceeding with discovery. *Fed. Deposit Ins. Corp. v. Renda*, 1987 WL 348635, *2 (D. Kan. 1987) (stating that these five factors have been "universally recognized as being critical to a proper balancing of the competing interests at stake.").

### 1.  Plaintiff's Interest and Potential Prejudice in Delay

#### a.  Computerized Claims Data

Plaintiff faces a serious potential threat that relevant and important evidence may be lost if discovery is delayed. *See* Affidavit of Dr. Yaraslau Zayats (Exhibit 1) (hereinafter "Dr. Zayats Aff."); Affidavit of Christopher S. Tragasz (Exhibit 2) ("Tragasz Aff."). For example, NMOHC will need various types of claims data from Presbyterian and from third party health plans in New Mexico. *See* Dr. Zayats Aff. at ¶¶ 2-3 (Ex. 1). This type of data is needed to help define the relevant markets, Presbyterian's market share, and the impact of Presbyterian's practices on those markets. While "[e]lectronic discovery from health plans often can be avoided if relevant hospital discharge data are available from a state agency," such state maintained data is not available here. *Id.* at ¶ 3. NMOHC will therefore need to collect the data through discovery from third party health plans in the area, and from Presbyterian. *Id.*

The claims data NMOHC needs is typically maintained electronically in database systems. *Id.* at ¶ 4. This makes the production of such records easier, because the producing party does not need to interview and search the files of numerous individuals. Instead, the production process typically involves the following steps "(1) identify relevant databases; (2) execute database queries that select the relevant records and data fields; (3) export the resulting data set(s) to an external hard drive or other portable

media." *Id.* at ¶ 4.  This process is not unduly burdensome, and Presbyterian does not claim in its Motion that such a process is burdensome.

Delaying the production of such information, however, could impose significant additional costs on NMOHC and the entities producing electronic data.  Many companies, for example, routinely upgrade and/or replace their database systems as improvements and alternatives become available.  Tragasz Aff. at ¶ 3.  If a stay is granted, Presbyterian and third parties may make database changes that make it more difficult and costly to obtain a workable data set.

Some of the entities from whom NMOCH will need records may have already made changes to their databases in the past.  Given that NMOHC will need data going back to at least 2005, some of the data may already sit in archives.  If this Court were to stay discovery, archived data could get lost or corrupted.  Further, a delay in retrieving archived data can increase the cost and burden associated with the retrieval and use of such data.  For example, "[w]here, as here, a party may need to obtain electronic database information as far back as January 1, 2005, or earlier, an open-ended delay preventing access to database information may result in data being lost, including if the database is replaced, destroyed, or archived." *Id.*

Dr. Yaraslau Zayats, a PhD Economist experienced in collecting the type of electronic discovery at issue, has "encountered situations in which a producing party had changed database systems, and thus historical data had to be retrieved from retired databases, some of which were no longer fully functional."  Dr. Zayats Aff. at 5.  Accessing retired and/or archived databases creates additional problems because it requires that the providing parties still employ staff who have the institutional knowledge

to competently access and navigate retired and/or archived databases.  Thus, delaying discovery may impose significant costs on NMOHC and possibly prevent NMOHC from obtaining needed information.

Further, NMOHC will need to collect claims data from Presbyterian and other regional health plans, all or most of whom likely use different database systems. NMOHC needs to start working with such data as soon as possible, because technical and compatibility issues between systems may arise which will take time for NMOHC to resolve.  Tragasz Aff. at ¶ 4.  Those delays will, in turn, push back the scheduling of depositions, as well as expert discovery.   Simply put, a blanket discovery stay will amplify the delays already inherent in obtaining and analyzing database information from multiple sources operating multiple and varied systems. Dr. Zayats Aff. at ¶ 6.

### b.        Other Types of Electronic Information

A blanket delay in discovery will also likely result in the loss of relevant emails and related metadata:

> [W]ith most email systems utilized by large commercial entities, a delay in obtaining discovery will greatly increase the likelihood that emails and the corresponding metadata will be deleted, over-written, or otherwise lost. Custodians through the course of routine use will likely delete messages from their email clients. In addition, many commercial email systems automatically purge copies of deleted messages from the email server within a certain timeframe, often 30 days.

Tragasz Aff. at ¶ 2.  The loss of this type of electronic discovery can be difficult to prevent, even under the best of circumstances.  In some circumstances the information is permanently lost.  Even if the information is recoverable, recovering deleted electronic files is both costly and time consuming. *Id.*

It is also important to highlight that this District's docket is a busy one, and it is possible that the motion to dismiss may not be decided in the near future.  As the court

6

noted in *SolidFx, LLC v. Jeppesen Sanderson, Inc.,* "a stay is likely to postpone discovery for a substantial period of time" because in Colorado the "average time from filing to determination of dispositive motions exceeds six months." 2011 WL 4018207 at *3. "In addition, motions to dismiss are denied far more than they are granted" so "[f]rom a purely statistical standpoint, the extended delay normally is not justified." *Id.*

### c.     Third-Party Discovery

As stated above, NMOHC will need discovery from third parties.  Because these third parties are not subject to a litigation hold, NMOHC could face substantial prejudice as a result of a discovery stay because of "the greater likelihood that evidence will be inadvertently destroyed or lost, or that witnesses' memories will have faded." *Id.* (internal citations and quotations omitted).  As time passes, such evidence may be archived and may require restoration or forensic reconstruction, increasing the cost of obtaining discovery and delay the completion of discovery. *Id.*

For all of these reasons, the first and primary factor in the five factor analysis weighs heavily against the grant of a blanket stay.

### 2.     Presbyterian's Burden

Presbyterian offers no "particular and specific" showing that that discovery will be burdensome.  Presbyterian's speculates that it will immediately face burdensome discovery.  Presbyterian's conclusory and speculative assertions appear in an affidavit prepared by one of its attorneys.  The affidavit, however, only contains generalized statements that discovery in antitrust cases is burdensome, and that Presbyterian has many employees and the conduct challenged by Plaintiff covers many years.  These generalizations are meritless for the reasons stated above, and because NMOHC has not

even served formal discovery on Presbyterian and Presbyterian refuses to discuss

discovery with NMOHC.  This Court should deny the Motion for these reasons alone.

> "It is the party seeking the protective order who has the burden to show
> good cause for a protective order." *Velasquez v. Frontier Med. Inc*., 229
> F.R.D. 197, 200 (D.N.M.2005)(Browning, J.). The party seeking the
> protective order must submit "a particular and specific demonstration of
> fact, as distinguished from stereotyped and conclusory statements." *Gulf
> Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S. Ct. 2193, 68 L.Ed.2d
> 693 (1981)(internal quotations and citations omitted).

*Murphy v. Gorman*, 271 F.R.D. 296, 303 (D.N.M. 2010).

It is Presbyterian that has refused to meet and confer with NMOHC concerning

the immediate scope and sequence of discovery.  Any discovery involves some type of

burden, but Presbyterian cannot legitimately claim "undue burden" when it refuses to

discuss ways to address this burden.  Nor is Presbyterian entitled to a discovery stay

when it makes no attempt to explain why this case "deserves special treatment not

accorded other complex cases not asserting antitrust claims."  *SolidFx*, 2011 WL

4018207 at *3.

Presbyterian's generalized claims of vague anticipated discovery costs also fail to

support their request for a stay.  *See Forest River, Inc. v. Heartland Recreational

Vehicles*, LLC No., 2012 WL 4049268, at *3 (N.D. Ind. 2012) (holding that discovery

stay was not warranted because movant failed to provide specific cost information or

evidentiary support for bald assertions that discovery would be an "enormous, needless

expense"); *Christou*, 2011 WL 650377, at *2 (holding that defendant did not provide

"specific arguments regarding how or why discovery will be unusually expensive and

protracted" even though defendant proffered that review of emails alone would require

60,000 hours of document review).

As explained above, much of the initial discovery will involve the production of electronic claims data from Presbyterian and other regional health plans. Zayats Aff. at ¶ 3. "The much heavier burden will be on NMOHC and its experts to process and combine the data from different parties in a way that would render the data suitable for analyses without compromising the analytic reliability of the data." *Id.*

With respect to Presbyterian's vague claims relating to thirty (30) unnamed witnesses who will need to be disclosed in the initial disclosures, there is nothing unusual or extraordinary about that type of initial disclosure in a complex commercial case. Had Presbyterian met and conferred with NMOHC, the parties could have addressed these and other particular issues to see what, if any, compromises could be reached (e.g. limiting initial disclosures to those individuals identified in the complaint). By filing this preemptive and blanket motion to stay discovery, which identifies no witnesses, Presbyterian has put NMOHC in the position of having to respond to vague and non-specific claims of burden in the blind.

Presbyterian has failed to come forward with the particular and specific showing of good cause required to obtain any protective order, much less evidence of the "extreme circumstances" which would justify a blanket stay of all discovery. The Motion should be denied on that basis alone. At minimum, the lack of any specific showing of burden should mean that this factor weighs against the Motion.

### 3.    Convenience to the Court

For the reasons described above, entry of a stay will delay the resolution of this matter and make the Court's docket less manageable. *See, e.g. Williams v. Four Corners Family Dental,* 11-cv-578, *1-2 (D.N.M. 2011) MV/LFG (a stay of discovery would

"make it difficult for the Court to meet its own obligations under the Civil Justice Expense and Delay Reduction Plan, and contribute to a delay in a final disposition..."); *Marquez v. Roybal*, 98-cv-889, *1 (D.N.M. 1999) JP/WWD (motions to dismiss are "commonplace" and "to allow proceedings to be stayed due to the pendency of a so-called dispositive motion would pretty much terminate activity in most of our cases."). This factor also weighs against the entry of a stay.

### 4. Interests of Non-Parties

As discussed above, NMOHC will need to obtain electronic claims data from third party health plans. The passage of time creates an ongoing risk that third party data will be deleted, overwritten, archived, or otherwise lost. Dr. Zayats Aff. at ¶ 5; Tragasz Aff. at ¶ 3. Attempts to recover archived or lost data from retired databases or, worse yet, deleted data sets, may not be successful and are likely to increase the burden and cost for the third parties. Beginning third party discovery now is the best chance to recover needed data without extraordinary recovery measures.

### 5. The Public Interest

The public interest here extends beyond the interest in a quick and fair resolution that underlies all lawsuits. This case addresses the inability of cancer patients to obtain access to treatment and medications from institutions other than those operated or favored by Presbyterian. It also involves actions by the defendants that interfere with NMOHC's relationships with its patients, and which degrade NMOHC's ability to treat its cancer patients in an comprehensive and efficient manner. A blanket stay of discovery not only brings the action to a halt, but it directly interferes with and impacts the medical treatment of a particularly vulnerable segment of the New Mexico population.

All of the above factors weigh heavily against the Motion. Because of that analysis, and the already strong presumption against blanket stays of discovery, Presbyterian's Motion should be denied.

**B.     No Blanket Stay In Antitrust Lawsuits**

Overall, Presbyterian's Motion is based on nothing more than its belief that discovery stays should be automatic when a motion to dismiss is filed. The Court should reject Presbyterian's argument. Presbyterian's reliance on *Bell Atlantic Corp. v. Twombly* is meritless: "*Twombly's* concerns with the potential costs associated with antitrust discovery 'is not … tantamount to an automatic prohibition on discovery in every antitrust case where defendants challenge the sufficiency of a complaint.'" *New England Carpenters Health and Welfare Fund v. Abbott*, 2013 WL 690613, at * 3 (N.D. Ill. 2013); *see also In re Flash Memory Antitrust Litigation*, 2008 WL 62278, * 3 (N.D. Cal. 2008) (unpublished) (*Twombly* does not hold, "implicitly or otherwise, that discovery in antitrust cases is stayed or abated until after a complaint survives a Rule 12(b)(6) challenge."). The Court in *Twombly* did not even create a special pleading rule for antitrust cases. The Court simply held that the expense of certain types of modern litigation justified the Court's revisiting and clarifying the pleading standard in all federal cases.

Presbyterian's belief that it has a "serious and substantial" motion to dismiss does not justify a discovery stay. [2] NMOHC does not agree with Presbyterian's characterization of the motion to dismiss, and Presbyterian's self-serving declaration is

---

[2] In their Motion, the defendants appear to be asserting that the plaintiffs lack standing with respect to their antitrust claims but not their other claims. Doc. 33 at 9. Thus, unlike the facts in *Nextstar,* a case relied on in the defendants' Motion, the defendants here are not seeking to dismiss all of the claims on the basis of the threshold issue of standing.

nothing more than rank speculation.  *See Niederhoffer Intermarket Fund, L.P. v. Chicago Mercantile Exchange*, 1999 WL 731773, at *1 (N.D. Ill. 1999).

*New England Carpenters Health* is instructive.  There, the plaintiffs, seeking to represent a nation-wide class, alleged that the defendant "violated federal racketeering and antitrust laws by paying undisclosed kickbacks, through prescription copayment subsidiary programs, to privately-insured individuals so that those health plan members would choose [the defendant's] branded drugs instead of a less expensive therapeutic alternatives."  2013 WL 690613 at * 1.  The defendants filed a motion to stay all discovery pending a ruling on their 12(b)(6) motion to dismiss.  The court noted that the defendants had "not rais[ed] a threshold issue such as standing or immunity from suit," but predicat[ed] their argument on "the assumption that its motion to dismiss has a high likelihood of success."  *Id*. at *2.  The magistrate judge rejected that assumption as mere speculation, stating that to ask the court "to make a preliminary finding on the likelihood of success on the merits circumvents the usual procedures for ruling on motions."  *Id*.

In *SolidFx, LLC v. Jeppesen Sanderson, Inc*., the court similarly denied the defendant's motion to stay discovery, stating that the defendant failed to explain why it deserved special treatment not accorded to other complex cases simply because the case involved antitrust claims.  No. 11-01468, 2011 WL 4018207, at *3 (D. Colo. 2011).  The court concluded that "the burden of antitrust discovery" was "substantially less than that involved in *Twombly* because *Twombly* involved a putative class composed of 'all [telephone and/or internet] subscribers … since 1996" alleging antitrust claims against carriers "who allegedly control 90 percent or more of the local market for local telephone service in the 48 contiguous States.'  *Id*. (citing *Twombly*, 550 U.S. at 550).   The court

further stated that because the action was "brought by one company against another based on events surrounding an alleged breach of contract," the "scope of cases, and "likely discovery associated with them, [were] vastly different." *Id*.  Consequently, the court determined that the defendant "failed to 'make a particular and specific demonstration of fact in support' of the claimed need for a stay." *Id*. (quoting *Christou v. Beatport, LLC*, 2011 WL 650377, at *1 (D. Colo. 2011).  Cases such as *SolidFx* show that Presbyterian has not come close to meeting its burden with respect to the imposition of a blanket stay of discovery.

### Conclusion

Presbyterian has failed to meet its heavy burden, both factually and as a matter of law, that this case involves the "extreme circumstances" that warrant a blanket stay of discovery.  *Christou*, 2008 WL 650377, at *1.   Simply because the defendants have filed a 12(b)(6) motion in a case involving antitrust and RICO claims does not mean that they are entitled to a stay. For these reasons, and those discussed above, Presbyterian's Motion to Stay Initial Disclosures and Discovery should be denied.


**LAW OFFICES OF GEORGE M. SANDERS, P.C.**

By: /s/ George M. Sanders
George M. Sanders
150 N. Michigan Ave.
Suite 2800
Chicago, IL  60601
Telephone:  (312) 624-7645
Facsimile:   (312) 624-7701

**FOSTER, RIEDER & JACKSON, P.C.**

By:  /s/ J. Douglas Foster
J. Douglas Foster
Geoffrey D. Rieder
P.O. Box 1607
Albuquerque, NM  87103-1607
Telephone:  (505) 767-0577
Facsimile:  (505) 242-9944


Attorneys for Plaintiff


I HEREBY CERTIFY that on the 28th day of May, 2013, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Bruce D. Hall
Charles K. Purcell
Rodey, Dickason, Sloan, Akin & Robb, PA
PO Box 1888
Albuquerque, NM 87103

Jeffrey A. LeVee
Jones Day
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071


FOSTER, RIEDER & JACKSON, P.C.

By: /s/J. Douglas Foster
      J. Douglas Foster