## DECLARATION OF YARASLAU ZAYATS

I, Yaraslau Zayats, state as follows:

1. I am a Principal in the Antitrust and Healthcare Practices at Bates White, LLC, a professional services firm that performs economic and statistical analysis in a variety of industries and forums. As a PhD economist, I specialize in performing economic and statistical analyses of competition, market definition, and market power in antitrust matters, with a particular emphasis on the healthcare industry. For example, on behalf of the U.S. Department of Justice and the Federal Trade Commission, I have performed economic analysis in merger and monopolization investigations in the healthcare industry. Similarly, on behalf of private entities, I have evaluated the competitive effects and other antitrust questions in the hospital, insurance, and pharmaceutical industries. I am making this declaration in support of the response by New Mexico Oncology and Hematology Consultants, Inc. (NMOHC) opposing the defendants' motion to stay initial disclosures and discovery.

2. I am familiar with the types of information and data necessary to analyze alleged anti-competitive practices in the healthcare industry. I have experience requesting, facilitating, and analyzing data discovery in antitrust litigation involving health plans and hospitals. Indeed, many of my past engagements are complex antitrust matters that involved extensive discovery and required data-intensive analyses.

3. In this lawsuit, I anticipate that NMOHC will need to obtain certain categories of claims data from defendants and from third party health plans in New Mexico. For the purpose of analyzing competition among general acute care hospitals, electronic discovery from health plans often can be avoided if relevant hospital discharge data are available from a state agency. However, such hospital discharge data are not available from the State of New Mexico at a

1

useful level of disaggregation, and therefore NMOHC will need to obtain those data through discovery from third-party health plans in the area, and from defendants. Moreover, discharge data only contain information pertaining to inpatient admissions (i.e., hospital stays that last at least one night). I understand that the allegations in this case involve both inpatient and certain outpatient services; hence, data on comprehensive oncology services and physician referrals for these services are likely to be necessary for the analyses.

4. The claims data that will be required are typically maintained electronically in the normal course of business. I have worked with counsel and third parties to collect such data. Typically, the necessary effort by the providing party entails the following: (1) identify relevant databases; (2) execute database queries that select the relevant records and data fields; (3) export the resulting data set(s) to an external hard drive or other portable media. The much heavier burden will be on NMOHC and its experts to process and combine the data from different parties in a way that would render the data suitable for analyses without compromising the analytic reliability of the data.

5. Delaying discovery may impair NMOHC's ability to recover complete and accurate data. For example, in order to conduct relevant analyses, I anticipate that NMOHC will need data for at least the period starting January 1, 2005, and possibly earlier. Without knowing the retention policies of defendants or third parties, and with no ability to guarantee that such policies are followed, relevant information may be lost due to the passage of time. In the past, I have encountered situations in which a producing party had changed database systems, and thus historical data had to be retrieved from retired databases, some of which were no longer fully functional. In addition, accessing retired and/or archived databases typically requires that the

providing party still employs staff who have the institutional knowledge to competently access and navigate retired and/or archived databases.

6.  It is important that NMOHC begin the process of obtaining claims data promptly because, in my experience, it is common for technical issues to arise—the resolution of which may require extensive communications between the producing and receiving parties, and potentially Court intervention. In addition, it will take NMOHC time to process and combine the data into a database suitable for analysis. An indefinite stay of all discovery is highly likely to only further compound the delays already inherent in obtaining claims data from multiple sources operating multiple and varied systems.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of May, 2013

*Yaraslau Zayats*

Yaraslau Zayats, PhD
Bates White, LLC