IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO ONCOLOGY AND
HEMATOLOGY CONSULTANTS, LTD.,

    Plaintiff,

v.                                                          Civ. No. 12-526 MV/GBW

PRESBYTERIAN HEALTHCARE SERVICES, et al.,

    Defendants.

**ORDER GRANTING NONPARTY MOTIONS TO QUASH SUBPOENA**

This matter comes before the Court on Nonparty Lovelace Health System Inc.'s Objections to Subpoena, Motion for Protective Order & Motion to Quash (*Doc. 116*) and Nonparty Southwest Gynecologic Oncology Associates, Inc.'s Motion for Protective Order & Motion to Quash Subpoena (*Doc. 124*). The Court held a hearing on the motions on May 27, 2015. *Doc. 162*. Having considered the briefing, the argument presented at the hearing, and the applicable law, the Court will GRANT both Motions to Quash.

**I.**      **BACKGROUND**

Plaintiff New Mexico Oncology and Hematology Consultants, Ltd. ("NMOHC") brings claims against Defendants Presbyterian Healthcare Services, Presbyterian Network, Inc., Presbyterian Insurance Company, Inc., and Presbyterian Health Plan, Inc. (collectively "Presbyterian") for alleged monopoly control over (1) private health insurance, (2) comprehensive oncology services, and (3) inpatient hospital services in the Albuquerque/Rio Rancho area. *See generally doc. 123*; *see also doc. 129* at 1-2. Plaintiff alleges that "Defendants

1

control the dominant hospital in Albuquerque" and "more than 50% of the patients receiving inpatient hospital services in Albuquerque." *Doc. 123* at 1. Specifically, Plaintiff claims that Presbyterian engages in anti-competitive conduct in the areas of physician referrals and specialty drug sales and administration. *See generally doc. 123.*

Defendants served third-party subpoenas on movants Lovelace Health System, Inc. ("Lovelace") and Southwest Gynecologic Oncology Associates, Inc. ("Southwest") on January 15, 2015. *Doc. 116,* Ex. A at 1; *doc. 124*, Ex. A at 1. Like Presbyterian, movants Lovelace and Southwest both provide oncology services within New Mexico. The two subpoenas are essentially identical and consist of 19 numbered requests for production with a total of 49 subparts. *Doc. 116*, Ex. A; *doc. 124*, Ex. A; *doc. 116* at 2. Broadly speaking, Presbyterian contends that the information sought is relevant to defining the markets in this case. The subpoenas request a broad range of information concerning, *inter alia*, the movants' oncology services; billing and claims data; patients, including unique patient identifiers; physicians, including contracts and noncompetition agreements with physicians; sources of referrals; contracts with healthcare payers; specialty drug purchases and administration; financial statements; and governing documents. *See generally doc. 116*, Ex. A; *doc. 124*, Ex. A. The discovery requests cover an eight-year period from January 1, 2007, to the present. *Doc. 116*, Ex. A at 6; *doc. 124*, Ex. A at 5.

Both Lovelace and Southwest objected to the subpoenas and moved for orders to quash. *Docs. 116, 124*. Movants object to the subpoenas on a number of grounds, including overbreadth, irrelevance, and confidentiality. Lovelace and Southwest further contend that the Stipulated Protective Order currently in place (*doc. 93*) is insufficient to assuage their concerns

regarding the disclosure of confidential business information and patient identifying information. The protective order, entered on October 17, 2014, permits sensitive information obtained during discovery to be designated as either "CONFIDENTIAL" or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." *Doc. 93.* Disclosure of documents with the latter designation would be limited to the parties' outside counsel and other minor groups of individuals such as experts, stenographic reporters, and Court employees. *Id.* at 5-6. Neither Lovelace nor Southwest participated in the drafting of that order.

Lovelace filed its Motion to Quash on February 27, 2015 (*doc. 116*), and the motion was fully briefed on April 13, 2015 (*doc. 134*). Southwest filed its Motion to Quash on March 19, 2015 (*doc. 124*), and the motion was fully briefed on May 4, 2015 (*doc. 151*).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs the procedure for obtaining discovery from a nonparty. *See Simon v. Taylor*, No. 12–0096 JB/WPL, 2014 WL 6633917, at *14 (D.N.M. Nov. 18, 2014). Because a Rule 45 subpoena is a discovery device, it is subject to a court's scheduling order as well as applicable rules of procedure. *See Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 122 (N.D. Ind. 2001). Likewise, "[a] subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.), Inc.*, No. 11–cv–01611–MSK–CBS, 2014 WL 1257762, at *21 (D. Colo. Mar. 27, 2014) (internal quotations omitted).

"While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated." *Premier Election Sol., Inc. v. Systest Labs, Inc.*, No. 09–cv–

3

01822–WDM–KMT, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009). "It is generally recognized that a non-party involuntarily embroiled in civil litigation should not be subjected to undue burden or significant expense merely by virtue of having received a subpoena." *W. Convenience Stores*, 2014 WL 1257762, at *21 (internal quotations omitted).

A nonparty that has been served with a subpoena pursuant to Rule 45 may move to quash a subpoena pursuant to Rule 45(d)(3). "On timely motion, the court . . . must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "Determinations of issues of 'undue burden' are committed to the discretion of the trial court." *Johnson v. Bryco Arms*, 226 F.R.D. 441, 444 (E.D.N.Y. 2005) (quotations omitted). The determination "requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it . . . ." 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2463.1 (3d ed. West 2015). Courts should consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (quoting *U.S. v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).

A court "may [also] . . . quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B). Courts generally recognize that "disclosure to a competitor is more harmful than disclosure to a noncompetitor," *R & D Bus. Sys. v. Xerox Corp.*, 152 F.R.D. 195, 197 (D. Colo. 1993)), and that even the entry of "a protective order may not sufficiently eliminate the risk of

real harm," *Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Elec., Inc.*, 2014 WL 2808984, at *5 (N.D. Ill. June 20, 2014). Courts are particularly concerned about this risk where, as here, the discovery request is directed at a nonparty. *Id.* at *4 ("Th[e] risk [that there could be a violation of a protective order] is one that a *party* must, of necessity, endure. But it is not one that a nonparty ought to be forced to take where the party seeking the information is its foremost competitor and there appear to be alternative sources of information.") (emphasis in original).

### III. ANALYSIS

#### A. Lovelace's Motion to Quash Subpoena (*Doc. 116*)

At the May 27, 2015 motion hearing, counsel for Lovelace averred that Lovelace Medical Group, the sector of Lovelace Health System, Inc. that retains physicians, does not employ oncologists. *Doc. 162* at 2-3. Counsel further maintained that, to the extent oncology services are provided at Lovelace facilities, these services are not performed by physicians employed by Lovelace, but rather by outside physicians with privileges at the hospital. *Id.*

In light of these representations, the Court finds that Lovelace does not possess any information responsive to Presbyterian's subpoena. As drafted, the subpoena is directed at providers of oncology services—i.e. at physicians or groups of physicians—and not at facilities where oncology services are provided. It is therefore ordered that Lovelace respond to the subpoena with an affidavit affirming that it does employ any physicians who provide oncology services. This affidavit should further state that, to the extent oncology services are provided at Lovelace facilities, those services are not performed by physicians employed by Lovelace Medical Group.

Provided Lovelace complies with the above directive, Lovelace's Motion to Quash (*doc. 116*) is hereby GRANTED.

### B. Southwest's Motion to Quash Subpoena (*Doc. 124*)

Southwest argues that Presbyterian's subpoena is overbroad and requests confidential business information that cannot be adequately protected by the existing protective order. *Doc. 162* at 5. Moreover, Southwest maintains that it is not part of the relevant market because it provides only gynecologic oncology services, not comprehensive oncology services. *Id.* Southwest argues that "[g]ynecologic oncology is a specialty within obstetrics and gynecology," *doc. 124* at 2, and notes that "[t]he certifying board for Southwest's doctors is the American Board of Obstetrics and Gynecology—not the American Board of Internal Medicine, which certifies doctors in comprehensive oncology, *doc. 124* at 9-10. Moreover, at the May 27, 2015 hearing, counsel for NMOHC confirmed that it did not provide the surgical services for gynecologic cancers that Southwest provided. *Doc. 162* at 6. For its part, Presbyterian provided no evidence or proffer that it provides gynecologic oncological services. *Id*.

In light of the foregoing, the Court holds that Presbyterian has failed to show that Southwest's practices are sufficiently relevant to defining the markets in dispute. To the extent that Southwest possesses relevant information responsive to Presbyterian's subpoena, the burden of responding to the subpoena far outweighs the value of the information to Presbyterian. Southwest's Motion to Quash (*doc. 124*) is, therefore, GRANTED.

### C. Award of Reasonable Expenses

Federal Rule of Civil Procedure 37(a)(5)(A) authorizes an award of "the movant's reasonable expenses incurred in making [a discovery] motion, including attorney's fees." This

6

payment shall not be required if (i) the prevailing party failed to make a good faith effort to obtain the disclosure without court action; (ii) the "losing" party's grounds were "substantially justified" or (iii) the "circumstances make an award of expenses unjust."  *Id*.

"Rule 45 is not explicitly covered by Rule 37; however, certain district courts have [nevertheless] imposed reasonable expenses" on the losing party.  *CSX Transp., Inc. v. Gilkison*, No. 5:05–CV–202, 2009 WL 2985594, at *5 (N.D. W. Va. Sept. 15, 2009) (citing cases).  Here, due to Lovelace's and Southwest's failure to fully meet and confer regarding their objections, the Court will not order Presbyterian to pay expenses incurred in bringing these motions.[1]

## IV.  CONCLUSION

For the foregoing reasons, Lovelace Health System Inc.'s Motion to Quash Subpoena (*Doc. 116*) and Southwest Gynecologic Oncology Associates, Inc.'s Motion to Quash Subpoena (*Doc. 124*) are GRANTED.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

[1] As noted at the hearing, the Court expects counsel to fully meet and confer over discovery disputes. Failures to do so may result in summary rulings on disputes and will result in the imposition of sanctions against the offending party.