IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO ONCOLOGY AND
HEMATOLOGY CONSULTANTS, LTD.,

   Plaintiff,

v.            Civ. No. 12-526 MV/GBW

PRESBYTERIAN HEALTHCARE SERVICES, et al.,

   Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL AND FOR ATTORNEYS' FEES

This matter comes before the Court on Plaintiff's Motion to Compel and for Attorneys' Fees (*doc. 144*).  The motion is fully briefed (*docs. 158, 171, 175*), and the Court has held a hearing on the matter (*doc. 184*).  Moreover, the parties have resolved certain disputes among themselves.  *See docs. 186, 188*.  Being fully advised, the Court will grant the Motion in part and deny it in part.

I. **BACKGROUND**

Plaintiff New Mexico Oncology and Hematology Consultants, Ltd. ("NMOHC") brings claims against Defendants Presbyterian Healthcare Services, Presbyterian Network, Inc., Presbyterian Insurance Company, Inc., and Presbyterian Health Plan, Inc. (collectively "Presbyterian") for alleged monopoly control over (1) private health insurance, (2) comprehensive oncology services, and (3) inpatient hospital services

(IHS) in the Albuquerque-Rio Rancho area.  *See generally doc. 123; see also doc. 129* at 1-2.

Plaintiff alleges that "Defendants control the dominant hospital in Albuquerque" and

"more than 50% of the patients receiving inpatient hospital services in Albuquerque."

*Doc. 123* at 1.  Plaintiff claims that Presbyterian engages in anti-competitive conduct in

the areas of physician referrals and specialty drug sales and administration.  *See*

*generally doc. 123.*  Plaintiff alleges that Defendants use their monopoly power over IHS

to monopolize the market for Private Health Insurance and as part of its attempt to

monopolize the market for Comprehensive Oncology Services.  Plaintiff further alleges

that Defendants control referrals from their physicians in order to maintain or expand

their monopoly position.  Plaintiff specifically alleges that Defendants use their control

over physicians to limit referrals to Plaintiff.  Finally, Plaintiff asserts, subject to a ruling

on the pending motion to dismiss, an independent antitrust cause of action due to

Defendants' alleged IHS monopoly.

## II.  LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  "For good cause,

the court may order discovery of any matter relevant to the subject matter involved in

the action."  *Id.*  Moreover, "[r]elevant information need not be admissible at the trial if

the discovery appears reasonably calculated to lead to the discovery of admissible

evidence."  *Id.*

Federal Rule of Civil Procedure 37(a) permits a party to file a motion to compel responses to properly propounded discovery. *See* Fed. R. Civ. P. 37(a). A court may limit discovery if, after balancing the needs and costs of the proposed discovery, the costs "outweigh[] its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211 (D. Kan. 2002). "However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." *Bonanno v. Quizno's Franchise Co.*, 255 F.R.D. 550, 553 (D. Colo. 2009).

"On motion or on its own, the court must limit the frequency or extent of discovery … if it determines that … the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C).

### III.   ANALYSIS

### A.   <u>Billing and Claims Data for Inpatient Hospital Services ("IHS")</u>

The first category in which discovery disputes remain includes two requests for production which seek billing and claims data for Inpatient Hospital Services provided by Defendants (RFP 41, RFP 45).  Defendants essentially seek a stay on responding to these discovery requests until a ruling on its motion to dismiss Plaintiff's newly asserted claims regarding an "IHS" market (*doc. 141*).  First, Defendants summarize their arguments for dismissal of the IHS markets claims.  Next, Defendants contend that, without those claims, the discovery sought is not relevant or, at least, would be unduly burdensome given its limited relevance.  Therefore, Defendants argue that the discovery should not be compelled until if and when its motion to dismiss is denied.  Defendants, however, do not appear to argue that these discovery requests would appropriate should the IHS market claims survive the pending motion to dismiss.

Because Defendants have not established that the requests would be irrelevant or unduly burdensome based on Plaintiff's claims as they stand now, the Court must decide only whether it should exercise its discretion to stay this particular discovery. When considering a stay, the Court asks whether Defendants will suffer harm without a stay, whether a stay would prejudice Plaintiff, and the public interest in granting the stay "including judicial economy and the risk that the litigants' time and resources will be wasted with duplicative litigation."  *See Cross Media Works, Inc. v. Reid*, 2010 WL

4811758 at *3 (W.D. Okla. Nov. 19, 2010) (citing *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588

(10th Cir. 1963)).

This is not Defendants' first request for a stay.  More than two years ago, prior to

the commencement of any discovery, Defendants sought a stay of all discovery pending

a ruling on its motion to dismiss all Plaintiff's claims in the Second Amended

Complaint.  *See docs. 33, 34.*  Concluding that a "stay [was] appropriate … because this

case will likely involve substantial and expensive discovery, which dismissal would

render moot," the Court granted the stay.  *Doc. 44.*

The calculation is significantly different now.  Most of Plaintiff's claims survived

the initial motion to dismiss.  By all rights, discovery on those claims should proceed.

Defendants argue that if the billing and claims data discovery is stayed, the remaining

discovery could go forward unimpeded.  The Court is not convinced.  As Plaintiff

points out, even without a separate claim relating to the IHS market, their claims that

have already survived a motion to dismiss allege Defendants' use of monopoly power

in the IHS market to monopolize the market for comprehensive oncology services.

Therefore, even assuming dismissal of the independent IHS market claim, at least some

discovery of IHS data would be appropriate.  Plaintiff would be entitled to use that data

in depositions and when plotting a discovery strategy going forward.  Consequently,

depriving it of that data during a second, albeit  targeted, stay would run the significant

risk of duplicative and inefficient discovery for all parties.

The Court is cognizant of the breadth of these discovery requests and the expense that will be incurred in responding.  However, the nature of this case means that even appropriately limited discovery will be expensive and burdensome for all parties.  In the end, the Court is not convinced that a stay of the IHS data discovery would limit expense or burden in the long run.  Therefore, Plaintiff's motion to compel responses to RFPs 41 and 45 will be granted.

B.  **Market Share and Market Plans**

The second category in which discovery disputes remain includes requests for production which seek communications and documents regarding market share and market plans in IHS and non-oncology specialties[1] (RFPs 77, 79, 80, 81, 82, 83, 84, 290, 291, 292, 294, 295, 61, 62, 63, 109, 110, 111, 112, 113, 115, 116, 117, 118, 119, 120, 199, 281).  Plaintiff alleges that Defendants use their monopoly power over IHS to monopolize the market for Private Health Insurance and as part of its attempt to monopolize the market for Comprehensive Oncology Services.  Plaintiff further alleges that Defendants control referrals from their physicians in order to maintain or expand their monopoly position.  Plaintiff specifically alleges that Defendants use their control over physicians to limit referrals to Plaintiff.  Finally, Plaintiff asserts, subject to a ruling on the pending motion

---

[1] As the issues have been organized by the parties, this group has been split across two categories: requests regarding IHS and requests regarding strategy requests in medical specialties other than oncology.  Presumably, requests relating to IHS strategy were addressed separately due to Defendants' request to stay all IHS discovery pending ruling on the motion to dismiss.  Having rejected that argument, there is no longer a reason to segregate strategy requests relating to IHS from those relating to other non-oncology specialites.

to dismiss, an independent antitrust cause of action due to Defendants' alleged IHS monopoly.

Given these allegations, Defendants' market share in IHS and in non-oncology specialties are relevant.  Moreover, Defendants' perception of their market share and any market plans based upon that market share are relevant.  Consequently, barring undue burden, the responses to these requests should be compelled.  While most of Plaintiff's requests, especially as subsequently limited, are appropriately tailored, some of them cast a net so wide that the burden of responding outweighs its likely benefit. With that background, the Court rules on Plaintiff's Motion to Compel responses to the respective RFPs as follows:

RFP 77 – Denied.  Plaintiff's request for "all communications between PHS and any person or entity concerning the preparation of any market plans, [etc.] addressing … any [IHS] provided by PHS in Albuquerque" is an extraordinarily broad net.  At this point, the burden of searching for all possibly responsive items outweigh the likely benefit of doing so.  After receipt and review of the plans themselves, Plaintiff may propound better targeted requests for communications which could be relevant to its causes of action.

RFP 79  Denied.  Plaintiff's request for "all communications between PHS and any person or entity concerning any market plans, [etc.] addressing … any [IHS] provided by PHS in Albuquerque" is an extraordinarily broad net.  At this point, the

burden of searching for all possibly responsive items outweigh the likely benefit of
doing so.  After receipt and review of the plans themselves, Plaintiff may propound
better targeted requests for communications which could be relevant to its causes of
action.

RFP 80 – Granted as explained.  This request seeks "all documents concerning
investigations conducted by PHS …, concerning the market for any [IHS] provided by
PHS in Albuquerque."  While it could be read more broadly, the Court reads it as
seeking documents containing the results of such investigations and any documents
referenced therein.  Construed thusly, the request is not unduly burdensome.

RFP 81 – Granted as explained.   This request seeks "all documents concerning
investigations conducted by PHS …, concerning PHS' competitors with respect to any
[IHS] provided by PHS in Albuquerque."  While it could be read more broadly, the
Court reads it as seeking documents containing the results of such investigations and
any documents referenced therein.  Construed thusly, the request is not unduly
burdensome.

RFP 82 -- Denied.  Plaintiff's request for "all communications between PHS and
any of its subsidiaries concerning any market plans, [etc.] addressing … any [IHS]
provided by PHS in Albuquerque" is an extraordinarily broad net.  At this point, the
burden of searching for all possibly responsive items outweigh the likely benefit of
doing so.  After receipt and review of the plans themselves, Plaintiff may propound

better targeted requests for communications which could be relevant to its causes of action.

RFP 83 – Granted in part.  This request seeks "all communications between any PHS officers, directors and employees concerning any market plans, [etc.] addressing … any [IHS] provided by PHS in Albuquerque."  As stated, the request casts a wide and burdensome net.  However, if limited to communications where the sender or recipient was a PHS officer or director, the Court is persuaded that the response would not be unduly burdensome.  With that limitation, the response will be compelled.  After receipt and review of the plans themselves and the communications involving senior level executives, Plaintiff may propound better targeted requests for communications which could be relevant to its causes of action.

RFPs 84, 290, 291, 292, 294, 295 – Granted.

RFPs 61, 62, 63, 109 – Granted.[2]

RFP 110 -- Denied.  Plaintiff's request for "all documents or information PHS or PMG relied upon when preparing any market plans, [etc.] responsive to RFP 109" is an extraordinarily broad net.  At this point, the burden of searching for all possibly responsive items outweigh the likely benefit of doing so.  After receipt and review of

---

[2] Plaintiff has agreed to limit the reach of RFPs 61, 62, 63, 109, 110, 111, 112, and 281, such that "physician services" would include those within the medical specialties of gastroenterologists, (b) pulmonologists, (c) rheumatologists, (d) dermatologists, (e) surgical specialists, (f) emergency room physicians, and (g) primary care doctors.  The Court's consideration of and ruling on each of these RFPs presumes that limitation.

the plans themselves, Plaintiff may propound better targeted requests for such material which could be relevant to its causes of action.

RFP 111 -- Granted.

RPF 112 -- Denied.  Plaintiff's request for "all documents or information any person or entity relied upon when preparing any market plans, [etc.] responsive to RFP 109" is an extraordinarily broad net.  At this point, the burden of searching for all possibly responsive items outweigh the likely benefit of doing so.  After receipt and review of the plans themselves, Plaintiff may propound better targeted requests for such material which could be relevant to its causes of action.

RFP 113 -- Denied.  Plaintiff's request for "all communications between PHS or PMG and any person or entity concerning the preparation of any market plans, [etc.] addressing … any physician services provided by PHS or PMG in Albuquerque" is an extraordinarily broad net.  At this point, the burden of searching for all possibly responsive items outweigh the likely benefit of doing so.  After receipt and review of the plans themselves, Plaintiff may propound better targeted requests for communications which could be relevant to its causes of action.

RFP 115 -- Denied.  Plaintiff's request for "all communications between PHS or PMG and any person or entity concerning any market plans, [etc.] addressing … any physician services provided by PHS or PMG in Albuquerque" is an extraordinarily broad net.  At this point, the burden of searching for all possibly responsive items

outweigh the likely benefit of doing so.  After receipt and review of the plans

themselves, Plaintiff may propound better targeted requests for communications which

could be relevant to its causes of action.

RFP 116 -- Granted as explained.  This request seeks "all documents concerning

any investigations conducted by PHS or PMG ..., concerning the market for any

physician services provided by PHS or PMG in Albuquerque."  While it could be read

more broadly, the Court reads it as seeking documents containing the results of such

investigations and any documents referenced therein.  Construed thusly, the request is

not unduly burdensome.

RFP 117 -- Granted as explained.  This request seeks "all documents concerning

any investigations conducted by PHS or PMG ..., concerning PHS' or PMG's

competitors with respect to any physician services provided by PHS or PMG in

Albuquerque."  While it could be read more broadly, the Court reads it as seeking

documents containing the results of such investigations and any documents referenced

therein.  Construed thusly, the request is not unduly burdensome.

PRF 118 -- Denied.  Plaintiff's request for "all communications between PHS or

PMG and any of their subsidiaries concerning any market plans, [etc.] addressing ...

any physician services provided by PHS or PMG in Albuquerque" is an extraordinarily

broad net.  At this point, the burden of searching for all possibly responsive items

outweigh the likely benefit of doing so.  After receipt and review of the plans

themselves, Plaintiff may propound better targeted requests for communications which could be relevant to its causes of action.

RFP 119 -- Granted in part.  This request seeks "all communications between any PHS' or PMG's officers, directors and employees concerning any market plans, [etc.] addressing … any physician service provided by PHS in Albuquerque."  As stated, the request casts a wide and burdensome net.  However, if limited to communications where the sender or recipient was a PHS officer or director, the Court is persuaded that the response would not be unduly burdensome.  With that limitation, the response will be compelled.  After receipt and review of the plans themselves and the communications involving senior level executives, Plaintiff may propound better targeted requests for communications which could be relevant to its causes of action.

RFP 120 – Granted.

RFP 199 – Granted.

RFP 281 – Granted.

**C. Modifications of, and Refusals to Enter into, Provider Contracts**

The final category in which discovery disputes remain includes requests relating to modifications of coverage under existing provider contracts and any refusals to enter into new provider contracts.  All matters sought in this category are relevant and discoverable.  However, to avoid undue burden certain requests should be narrowed.

RFPs 238, 239, 240, 241, 245 – Granted as explained.  These requests seek documents and communications related to requests by NMHOC or any other health care provider to PNI/PHP to authorize the reimbursement of additional services and procedure.  At the hearing, Plaintiff clarified that these RFPs seek only documents and communications related to requests by providers to add a new service to that provider's contract with PHP/PNI.  In other words, one-off requests to authorize a procedure for coverage would not be included.  Construed thusly, these RFPs are not unduly burdensome.

RFPs 243, 244 – Denied.  These requests seek "all documents concerning any refusal by PNI … to enter into provider contracts …."  While the general thrust of the request is entirely appropriate and relevant, the requests are drafted so broadly as to potentially encompass large quantities of irrelevant documents.  As such, the burden of searching for all possibly responsive items outweigh the likely benefit of doing so.  The Court is convinced that Plaintiff can redraft these RFPs in a far better targeted fashion.

### D. <u>Award of Reasonable Expenses</u>

Federal Rule of Civil Procedure 37(a)(5)(A) authorizes an award of "the movant's reasonable expenses incurred in making [a discovery] motion, including attorney's fees."  This payment shall not be required if (i) the prevailing party failed to make a good faith effort to obtain the disclosure without court action; (ii) the "losing" party's grounds were "substantially justified" or (iii) the "circumstances make an award of

expenses unjust."   Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).  While the Court granted a large proportion of Plaintiff's Motion to Compel, the "losing" party's grounds were "substantially justified" and the "circumstances make an award of expenses unjust." Therefore, the Court will deny Plaintiff's request for fees and costs.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel and for Attorneys' Fees (*doc. 144*) is GRANTED in part and DENIED in part as described above.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE