IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO ONCOLOGY AND
HEMATOLOGY CONSULTANTS, LTD.,

     Plaintiff,

v.                                                                          Civ. No. 12-526 MV/GBW

PRESBYTERIAN HEALTHCARE SERVICES, *et al*.,

     Defendants.

## ORDER

This matter is before the Court pursuant to a hearing held on several discovery motions on January 21, 2016.  *Doc. 256*.  At the hearing, the Court addressed Defendant's Motion for Addendum (*doc. 229*), Plaintiff's Motion to Compel (*doc. 226*), Defendant's Motion to Compel (*doc. 230*), and Defendant's Motion for Expedited Discovery (*doc. 243*).[1]  Having considered the motions and arguments presented, the Court will deny Defendant's Motion for Addendum (*doc. 229*), grant in part Plaintiff's Motion to Compel (*doc. 226*), grant in part Defendant's Motion to Compel (*doc. 230*), and grant in part Defendant's Motion for Expedited Discovery (*doc. 243*).  In addition, the Court will deny Plaintiff's Motion to Compel (*doc. 208*) as moot.

---

[1] This order memorializes the Court's rulings from the bench at the hearing held on January 21, 2016. *Doc. 256*.  The parties should notify the Court of any discrepancies between this order and their understanding of the Court's rulings at the hearing.

I.      BACKGROUND

Plaintiff New Mexico Oncology and Hematology Consultants, Ltd. ("NMOHC") brings claims against Defendants Presbyterian Healthcare Services, Presbyterian Network, Inc., Presbyterian Insurance Company, Inc., and Presbyterian Health Plan, Inc. (collectively "Presbyterian") for alleged monopoly control over: (1) private health insurance; (2) comprehensive oncology services; and (3) inpatient hospital services (IHS) in the Albuquerque-Rio Rancho area.  *See generally doc. 123*; *see also doc. 129* at 1-2. Plaintiff alleges that "Defendants control the dominant hospital in Albuquerque" and "more than 50% of the patients receiving inpatient hospital services in Albuquerque." *Doc. 123* at 1.  Plaintiff claims that Presbyterian engages in anti-competitive conduct in the area of physician referrals as well as specialty drug sales and administration.  *See generally doc. 123.*  Plaintiff alleges that Defendants use their monopoly power over IHS to monopolize the market for Private Health Insurance and as part of its attempt to monopolize the market for Comprehensive Oncology Services.

II.     LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  FED. R. CIV. P. 26(b)(1).  "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  *Id.*  Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence." *Id.*

Under Federal Rule of Civil Procedure 34(a), "[p]arties may . . . serve on any other party a request within the scope of Rule 26(b) for production of documents in the responding party's possession, custody, or control." *Abreu v. N.M. Children*, No. 08–1006-JB/RLP, 2010 WL 4053978, at *4 (D.N.M. Sept. 30, 2010) (quotations omitted).  This rule "enables a party seeking discovery to require production of documents beyond the actual possession of the opposing party, if such party has retained any right or ability to influence the person in whose possession the documents lie." *Bruner-McMahon v. Cnty. of Sedgwick*, No. 10–1064 KHV/GLR, 2011 WL 3704742, at *1 (D. Kan. Aug. 23, 2011). "Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has the legal right to obtain the documents on demand." *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 516-17 (D. Kan. 2007) (quotations omitted).  If a document is not in a party's possession, custody, or control, that party "shall affirmatively state so in a supplemental response." *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 307 (D. Kan. 1996).

Under Federal Rule of Civil Procedure 37(a), a party is permitted to file a motion to compel responses to properly propounded discovery.  *See* FED. R. CIV. P. 37(a).  A court may limit discovery if, after balancing the needs and costs of the proposed discovery, the costs "outweigh[] its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P.

26(b)(2)(C).

Finally, a Court's Scheduling Order "may be modified only for good cause and

with the judge's consent." FED. R. CIV. P. 16(b)(4).

III.   ANALYSIS

A.  Defendants' Motion for Addendum (*doc. 229*)

Defendants move the Court to approve an addendum to the Stipulated

Protective Order (*doc. 93*) which would limit local counsel's access to certain third-party

documents designated as "Highly Confidential – Attorneys' Eyes Only." *Doc. 229* at 9.

At the hearing, Defendants, along with third-party representatives from Southwest

Gynecological Associates and Lovelace, expressed concern that third parties could be

seriously harmed unless certain sensitive documents are screened from Plaintiff's local

counsel, the law firm of Foster, Rieder, and Jackson.  They allege that Plaintiff's counsel

George Rieder has represented Dr. Ampuero, a former employee of Southwest

Gynecological Associates, and that this representation could result in inadvertent

disclosure of highly confidential documents to Southwest's competitors.  Defendants

also argue that, due to New Mexico's small healthcare community, Plaintiff's local

counsel would be unable to compartmentalize the information they may learn from

these sensitive documents and may inadvertently disclose confidential information to

future healthcare clients.

4

While it is important to protect highly confidential information from being disclosed to competitors, the Court finds no substantial risk of inadvertent disclosure by Plaintiff's local counsel.  Mr. Rieder has terminated his representation with Dr. Ampuero and stated that his practice primarily consists of employment law issues rather than healthcare issues.  In addition, the parties have already agreed to a Stipulated Protective Order which requires all confidential documents to be either returned to the parties or destroyed once litigation has been completed.  The requested relief of screening local counsel from a portion of discovery is an extraordinary measure that should be granted only in the most extraordinary cases.  As there is no significant risk that Plaintiff's local counsel will disclose confidential information, the Court finds no basis for restricting Plaintiff's local counsel from any portion of discovery and denies Defendants' Motion for Addendum.

**B.      Plaintiff's Motion to Compel (*doc. 229*)**

     **(i)      <u>Interrogatory 3</u>**

Plaintiff's Interrogatory 3 provides:

3.      Identify all physicians and nurses who worked at or supervised the operations of the infusion centers identified in the prior Interrogatory, including (a) their name, (b) title, (c) area of specialty, (d) medical specialty, (e) when they started working at, or supervising the operations of, the relevant infusion center, and (f) when they stopped working at, or supervising the operations of, the infusion centers.

Plaintiff alleges that Defendants responded to Interrogatory 3 by providing information regarding their employees, but did not provide information regarding

employees of Pathology Associates of Albuquerque ("PAA) who worked at Defendants'
infusion centers.  Plaintiff alleges (1) that Defendants possess information regarding
these employees, which is contained in Defendants' records along with the PAA
employees' resumes and (2) that Defendants should be required to ask PAA for any
responsive information that they do not already possess.  In addition, Plaintiff claims
that Defendants' response regarding Presbyterian employees is insufficient and must be
supplemented.

Defendants claim that they do not possess any responsive information regarding
PAA employees in their records, and that the PAA employees' resumes do not contain
the information requested by Interrogatory 3.  Defendants state that supplementation of
the information regarding Presbyterian employees has been prepared and will soon be
provided.

The Court finds Defendants shall not be required to obtain information about
PAA employees from PAA; rather, if Plaintiff requires information not in the possession
of Defendants, Plaintiff may subpoena this information directly from PAA.  It is
therefore ordered that Defendants shall review their records and the resumes of PAA
workers, and shall produce any information that is responsive to this interrogatory.  If
no such responsive information is discovered, Defendants shall provide certification
that they do not possess the information requested.  Furthermore, Defendants shall

provide supplementation and certification as to the information regarding Presbyterian

employees by January 25, 2016.

**(ii)      Interrogatories 4 & 5**

Plaintiff's Interrogatories 4 and 5 provide:

4.      Identify any reductions in the co-pays or deductibles for any of PNI, PIC
or PHP's insureds as a result of the specialty pharmacy program (which
Plaintiff has referred to as the Mandate) that Defendants implemented in
early 2012, including (a) the percentage or dollar amount of any co-pay,
(b) the dollar amount of any reduction in deductibles, (c) the co-pay
amount and deductibles for each such insured from 2010 to 2015, and (d)
the methodology used to calculate or set the reduction in the co-pays or
deductibles.

5.      Identify any reductions in the health insurance premiums charged by PNI,
PIC or PHP to any of their insureds as a result of the Defendants' specialty
pharmacy program (which Plaintiff has referred to as the Mandate) that
Defendants implemented in early 2012, including (a) the dollar amount of
the premium reduction, (b) the total premium charged to each such
insured from 2010 to 2015, and (c) the methodology used to calculate or
set the premium reduction.

Plaintiff states that Defendants provided a chart detailing the co-pays,

deductibles, and premiums, which Plaintiff understands to show only two reductions.

However, Plaintiff requests that Defendants be required to certify that these two

reductions reflected in the chart are the only two reductions that occurred.  At the

motion hearing, Defendants agreed to provide such certification.  Plaintiff also objects

to Defendants' failure to identify the methodologies used to calculate or set these

reductions, as requested by Interrogatories 4(d) and 5(c).  Defendants state that they

7

have already agreed to review their information and supplement their responses as to the methodologies.

As Defendants have agreed to certify their response regarding the number of reductions and have also agreed to supplement their responses regarding the methodologies of the reductions, there is no longer a dispute as to Interrogatories 4 and 5. It is hereby ordered that Defendants provide a certification as to which data points in the chart constitute reductions, and supplement their response regarding the methodologies of the reductions.

### (iii)    Interrogatories 7, 8, & 11

Plaintiff's Interrogatories 7, 8, and 11 provide:

7.    Identify all of the co-pays and/or deductibles that each NMOHC patient was charged on a transaction by transaction basis when they purchased chemotherapy or chemotherapy support drugs from PHS' specialty pharmacy pursuant to the Mandate.

8.    Identify on a transaction by transaction basis the amount that PHP, or any other Third-Party Health Insurer, was charged and the amount that was paid by PHP, or any other Third-Party Health Insurer, for chemotherapy or chemotherapy support drugs on behalf of each NMOHC patient who purchased a chemotherapy support drug from PHS' specialty pharmacy pursuant to the Mandate.

11.    Identify each NMOHC patient who purchased chemotherapy or chemotherapy support drugs from PHS' specialty pharmacy pursuant to the Mandate, including (a) whether the patient was sold any drugs in connection with the 340B Drug Program, (b) whether Defendants made any determination if the patient was eligible to receive drugs PHS purchased in connection with the 340B Drug Program and what that determination was, (c) when the determination was made, (d) the price that Defendant PHS paid for the drug sold to the NMOHC patient, (e) the

amount the NMOHC patient or the patient's health insurer was charged for the drug, (f) the copay the patient was charged and the amount the patient paid towards the copay, and (g) the amount and source of any assistance the patient received with respect to the copay.

Plaintiff alleges that Defendants responded to this request by providing an incomplete chart of information.  Plaintiff argues that certain patients and high-revenue drugs are missing from the spreadsheet, and requests that Defendants be required to provide all missing information.  Defendants assert that they have provided all responsive information, and offer to supplement any information that Plaintiff can identify as missing from the chart.  Defendants also assert that Anna Marie Garcia, the director of Defendants' pharmacy, will soon be deposed and will likely resolve any issues regarding the chart during her deposition.

The Court finds that any disputes regarding the chart's incompleteness will likely be resolved by the upcoming deposition of Ms. Garcia, and therefore denies the motion to compel as to Interrogatories 7, 8, and 11.  However, if the deposition reveals gaps in the chart and Defendants fail to supplement the chart to fill those gaps, Plaintiff may file a new motion to compel after the completion of the deposition.

### (iv)          Interrogatory 13

Plaintiff's Interrogatory 13 provides:

13.     Identify each instance an NMOHC patient was infused with a prescribed medication by a nurse or physician employed by Defendant PHS or PMG in a restroom, including (a) the name of the NMOHC patient, (b) the date the infusion occurred, (c) the name of the nurse or physician supervising the infusion center at that time, (d) the physician supervisor of the

infusion center at that time, (e) the drug that was administered, and (f) a description of the layout of the restroom and any furniture in the restroom.

Plaintiff alleges that this interrogatory is relevant to demonstrate a low standard of care provided at Defendants' infusion centers. Plaintiff claims that Defendants failed to reasonably investigate their answer to this request, as they only spoke with one supervisor. Defendants deny that any infusions occurred in restrooms. While they concede that injections may have been administered in restrooms, this practice was infrequent and done at the request of the patient. Defendants argue that, given the nature of the request, they conducted a reasonable investigation by consulting Ms. Ellis, the supervisor of the infusion center since 2010.

In this case about alleged monopolistic practices, the relevance of standard of care at Defendants' infusion centers is not immediately apparent. Plaintiff argues that a poor standard of care could be used to prove that Defendants obtain patients more from monopolistic practices than by providing excellent medical care. As such, the allegedly poor standard of care would also demonstrate a type of harm resulting from Defendants' practices. Plaintiff further suggests that Defendants intentionally provided Plaintiff's patients with a low standard of care as part of Defendants' unfair competition with Plaintiff.

In any event, these arguments for relevance rely on the existence of a pattern of providing poor standard of care by performing infusions in restrooms.[2]  The Court finds that, while Ms. Ellis would not know every act which occurred in the infusion center, she would be aware of any pattern of performing infusions in restrooms.  As such, Defendants' investigation in support of their interrogatory answer was reasonable and sufficient.  Therefore, the motion to compel is denied as to Interrogatory 13.

(v)     <u>Interrogatory 14</u>

Plaintiff's Interrogatory 14 provides:

14.     Identify all information that you contend demonstrates that your provision of infusion services provided to NMOHC patients [constitutes] comparable or better medical care than similar infusion services provided by NMOHC.

Plaintiff objects to Defendants' response, specifically taking issue with their use of the phrase "among other things."  Plaintiff argues that this phrase suggests that Defendants have not disclosed all information they may have used in making such a determination.  Defendants claim that all the information they possess has been provided to Plaintiff, and that the phrase "among other things" simply indicates that Defendants cannot possibly know every piece of information that impacted their determination.

---

[2] The Court is persuaded by Defendants' distinction between infusions and injections.  Infusions are the provisions of medications through an intravenous line over some period of time.  Injections are quick "shots" of medicine.  Whereas conducting an infusion in a restroom may very well fail to meet the standard of care, administering a shot in a restroom for additional privacy would not.

The Court understands Plaintiff's concern that, due to the ambiguity in the current wording of the response, Defendants could later raise new information that impacted their decision by claiming that it falls within the catch-all phrase of "among other things."  However, in order for litigation to move forward, it is necessary for both parties to operate in a closed universe.  At the hearing, Defendants agreed to supplement their response to clarify that they are not relying on any other information beyond what has already been provided to Plaintiff.  The Court therefore denies the motion to compel as to Interrogatory 14, with the proviso that Defendants' supplement states that they did not rely on any information beyond the sources specifically listed in their response.

### C.  Defendants' Motion to Compel (*doc. 230*)

Defendants move the Court to order Plaintiff to fully respond to Document Request 119, which provides:

> 119.   For each physician [NMOHC alleges stopped referring patients to NMOHC or who has reduced the number of referrals], Documents that support or negate Your claim that he or she stopped referring patients to NMOHC or reduced the number of referrals to NMOHC.

In response to this request, Plaintiff alleges that it does not understand what types of documents would be covered by the word "negate."  Plaintiff also objects that this request is duplicative of Defendant's other requests.  Defendants argue that they used the term "negate" because they seek documents which evidence referrals by

Defendants to NMOHC, and also clarify that they are not requesting their own documents to be sent back to them.

The Court finds this document request to be unclear, but not duplicative of Defendants' other requests. With respect to the documents which "support" Plaintiff's claim, Plaintiff shall fully respond to this document request, with the exception that it is not required to send Defendants' documents back to them. With respect to Defendants' request for documents which "negate" Plaintiff's claim, Defendants shall amend their request to clarify what documents they are seeking. After the request has been amended, Plaintiff may file objections to that amended request if necessary.

### D. Defendants' Motion for Expedited Discovery (*doc. 243*)

Defendants move the Court to require Plaintiff to complete its document production by the end of January 2016. Defendants argue that Plaintiff has continuously delayed in producing its documents, and that Defendants would be prejudiced by the rising costs of litigation that would accompany any extension of the discovery deadline. Plaintiff argues that the discovery deadline should be extended until September 2016 in order to allow sufficient time for not only document production but also depositions.

The discovery deadline is currently set for April 15, 2016. While some extension of that deadline may be necessary, in order to avoid a long and prejudicial extension,

13

Plaintiff must complete production of all documents responsive to pending "non-expert" discovery requests by February 22, 2016.  Plaintiff is hereby ordered to do so.

### E.  Plaintiff's Motion to Compel (*doc. 208*)

On October 5, 2015, Plaintiff filed a Motion to Compel the Production of Documents which Defendants have Received Pursuant to Their Third-Party Subpoenas (*doc. 208*).  In its motion, Plaintiff objected to Defendants' proposal that Plaintiff's local counsel be restricted from certain discovery.  *See doc. 208*.  As the Court has ruled against that proposal as presented in Defendants' Motion for Addendum, Plaintiff's earlier motion is denied as moot.[3]

### F.  Award of Reasonable Expenses

Federal Rule of Civil Procedure 37(a)(5)(A) states that if "the motion [to compel] is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed.  R. Civ. P. 37(a)(5)(A).  This payment shall not be required if (i) the prevailing party failed to make a good faith effort to obtain the disclosure without court action; (ii) the "losing" party's grounds were "substantially justified" or (iii) the "circumstances make an award of expenses unjust."  *Id*.

---

[3] Moreover, at a motion hearing held on November 5, 2015, Plaintiff agreed to withdraw the motion.  *Doc. 222* at 6.

14

Having reviewed the course of events that led to the instant motions being filed, the Court is persuaded that several of the issues need not have been litigated in a motion to compel.  Unfortunately, the blame is shared roughly equally between the parties.  Moreover, reviewing the rulings above, the Court concludes that, for most issues, the losing party's grounds were substantially justified.  To the extent that they were not, the parties prevailed equally.  Therefore, the Court will not award expense to either party.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion for Addendum (*doc. 229*), GRANTS IN PART Plaintiff's Motion to Compel (*doc. 226*), GRANTS IN PART Defendant's Motion to Compel (*doc. 230*), GRANTS IN PART Defendant's Motion for Expedited Discovery (*doc. 243*), and DENIES AS MOOT Plaintiff's Motion to Compel (*doc. 208*).

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE