<div style="text-align:center">

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

</div>

NEW MEXICO ONCOLOGY AND
HEMATOLOGY CONSULTANTS, LTD.,

    Plaintiff,

v.                                                                                            Civ. No. 12-526 MV/GBW

PRESBYTERIAN HEALTHCARE SERVICES, *et al.*,

    Defendants.

<div style="text-align:center">

**ORDER REGARDING DISCOVERY MOTIONS**

</div>

This matter comes before the Court on the following motions: New Mexico Health Connections' Motions for Protective Order & to Quash (*docs. 285, 286*), University of New Mexico Medical Group and Regents of the University of New Mexico's Motion for Protective Order and to Modify Subpoenas (*doc. 289*), Lovelace Health System Inc.'s Motions to Quash (*docs. 291, 292, 334*), and Blue Cross and Blue Shield of New Mexico's Motion for Protective Order (*doc. 367*). The Court has reviewed the briefing on the motions (*docs. 285, 286, 290, 291, 292, 320, 321, 322, 323, 324, 325, 326, 334, 348, 353, 355, 365, 366, 367, 371, 390*), supplemental briefing (*docs. 373, 385, 386*), and held a hearing (*doc. 395*).

    **I.**    **LEGAL STANDARD**

Federal Rule of Civil Procedure 45 governs the procedure for obtaining discovery from a nonparty. *See Simon v. Taylor*, No. 12–0096 JB/WPL, 2014 WL 6633917, at *14 (D.N.M. Nov. 18, 2014). Because a Rule 45 subpoena is a discovery device, it is subject

to a court's scheduling order as well as applicable rules of procedure. *See Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 122 (N.D. Ind. 2001). Likewise, "[a] subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.), Inc.*, No. 11–cv–01611–MSK–CBS, 2014 WL 1257762, at *21 (D. Colo. Mar. 27, 2014) (internal quotations omitted). "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated." *Premier Election Sol., Inc. v. Systest Labs, Inc.*, No. 09–cv–01822–WDM–KMT, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009). "It is generally recognized that a non-party involuntarily embroiled in civil litigation should not be subjected to undue burden or significant expense merely by virtue of having received a subpoena." *W. Convenience Stores*, 2014 WL 1257762, at *21 (internal quotations omitted). In addition to the requirements of relevance and proportionality, discovery requests to third parties are subject to additional restraints. First, the

requesting party has the affirmative duty to "take reasonable steps to avoid imposing undue burden or expense" on the subpoenaed party. Fed. R. Civ. P. 45(d)(1). If the subpoena nonetheless "subjects a person to undue burden," then the court must quash or modify it. Fed. R. Civ. P. 45(d)(3). Moreover, the court may quash or modify the subpoena if it requires "disclosing a trade secret or other confidential . . . commercial information" unless the requesting party "shows a substantial need for the . . . material that cannot be otherwise met without undue hardship," and ensures that the subpoenaed person will be reasonably compensated." *Id*. In any event, under Fed. R. Civ. P. 45(d)(2)(B)(ii), a non-party is entitled to reimbursement for "significant expense resulting from compliance" with a subpoena. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184-85 (9th Cir. 2013); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).

## II.   RELEVANT BACKGROUND ON UNDERLYING LITIGATION

In Plaintiff's Second Amended Complaint ("SAC"), it brought claims against Defendants Presbyterian Healthcare Services, Presbyterian Network, Inc., Presbyterian Insurance Company, Inc., and Presbyterian Health Plan, Inc. (collectively "Presbyterian") for alleged monopoly control over (1) private health insurance and (2) comprehensive oncology services. *Doc. 24*. On February 16, 2015, Plaintiff filed a Third Amended Complaint ("TAC") which added an independent monopoly claim as to inpatient hospital services ("IHS"). *Doc. 105*. While the Court denied Defendant

Presbyterian's motion to dismiss the claims asserted in the SAC, the Court subsequently granted a motion to dismiss the independent monopoly claim as to inpatient hospital services asserted in the TAC.  *See docs. 79, 316*.  Most of the disputes discussed herein are based on arguments over the impact of this dismissal.

Broadly speaking, the Court concludes that information regarding the IHS market remains relevant to the remaining claims.  To prove Defendants' misuse of monopoly power in the private health insurance market, Plaintiff must, of course, prove that Defendants possess monopoly power.  Defendants have argued that their market share is insufficient to establish monopoly power.  But this Court has held that other factors are relevant to this inquiry – "the number and strength of the defendant's competitors, the difficulty or ease of entry into the market by new competitors, consumer sensitivity to change in prices, innovations or developments in the market, whether the defendant is a multimarket firm, as well as other evidence presented . . . that [a court] may deem persuasive regarding [a] defendant's market strength."  *Doc. 79* at 23 (citations and quotations omitted).

The Court specifically noted the relevance of the IHS market as to one of these factors:

> With respect to the fourth factor, whether the defendant is a multimarket firm, the complaint alleges that Defendants are part of a multimarket enterprise that competes in, at a minimum, the hospital inpatient services market, the private health insurance market, and the comprehensive oncology market.  Moreover, Plaintiff has alleged that because Defendants are part of a multimarket firm, they can use their power in one market to

4

> impede entry in another market. Plaintiff alleges, for example, that Blue Cross cannot act as a substitute for, or challenge the market position of, Defendant PHP because Blue Cross enrollees cannot receive covered treatment at Presbyterian Hospital and because Presbyterian's monopoly power over hospital inpatient services ensures that patients seeking treatment at Presbyterian will not purchase Blue Cross's products. Because Defendants are part of a multimarket firm and Plaintiff has alleged that they have used their dominance in one market to impede entry in another, this factor weighs in favor of a finding of monopoly power.

*Id*. at 25. Given this language, it is apparent that Defendants' market power in the IHS market remains relevant to Plaintiff's claims of monopolistic behavior in the private health insurance market and the comprehensive oncology market.

### III.  ANALYSIS OF CATEGORIES OF DISPUTES

####  a.  Patient and Claims Data

Both Plaintiff and Defendants have subpoenaed detailed patient and billing information for every inpatient hospital service provided by the University of New Mexico Medical Group ("UNMMG") and Lovelace over the past eight years. *Doc. 289-2* at 3-4; *doc. 289-5* at 10-11; *doc. 291-1* at 7-8; *doc. 334-1* at 8-9. Similarly, they have subpoenaed detailed patient and billing information for every claim submitted to New Mexico Health Connections ("NMHC") and Blue Cross Blue Shield ("BCBS") for an inpatient hospital service provided in the area surrounding Albuquerque over the past eight years. *Doc. 286-1* at 10-11; *doc. 367-1* at 11-12. The parties contend that they require this information to define the IHS market and evaluate Defendants' market power within it. As described above, Defendants' market power within the IHS market

5

is relevant to Plaintiff's remaining claims. Determining the relevant market is an important, and perhaps the first, step in a market power analysis. However, the Court finds that these requests are not proportional.

First, while the IHS market is still relevant, it is not the primary market at issue. Its relevance arises from one of four non-inclusive factors, which in addition to market share in the private health insurance market and the comprehensive oncology market, will be considered when deciding whether Defendants have abused monopoly power in those two markets. As such, a perfect econometric analysis of the IHS market is unnecessary. Depriving the parties of the information sought in these third-party subpoenas will not prevent them from gaining sufficient evidence regarding Defendants' power and behavior in the IHS market. For example, in the SAC, Plaintiff pointed to several other easily obtainable facts to support its allegations of Defendants' monopoly power in the IHS market: (i) percentage of patients receiving IHS in Albuquerque; (ii) number of inpatient discharges; (iii) number of staffed hospital beds; (iv) size of revenue versus other New Mexico hospital systems; and (v) share of profits compared to national averages. *See generally doc. 24*. Moreover, although the original Complaint was filed in May 2012 and the SAC was filed in February 2013, Plaintiff did not seek the comprehensive patient and claims data until years later[1] and after it had added the independent IHS monopoly claim in March 2015. This fact corroborates the

---

[1] The relevant subpoenas were served by Plaintiff between April and September 2015.


conclusion that the comprehensive data was not necessary until Plaintiff began pursuing the independent IHS monopoly claim.

Second, the comprehensive data request is massive. As BCBS estimated, its responsive request would include approximately seven million service lines. UNMMG explained that it "spent many months compiling similar patient data relating to a single service line (oncology services). It estimated 170 hours to collect such information for oncology services only; to compile the information requested for every service performed on an inpatient since 2007 would require many times as long as UNMMG spent on the oncology data." *Doc. 290* at 8-9.

Third, it is uncontroverted that the request seeks highly confidential patient data protected from disclosure under all but very limited and controlled circumstances by the Health Insurance Portability and Accountability Act ("HIPAA") and similar New Mexico privacy laws. *See doc. 367* at 2-3.

The Court does not doubt that using the requested data would be the gold standard method of defining and examining the IHS market. *See doc. 373*, Ex. 1. However, the IHS market is just one part of one factor relevant to Plaintiff's remaining claims. Significant other evidence of Defendants' power and behavior in the IHS market exists and can be utilized for the same purpose. Most importantly, using other evidence would not impose such a significant burden on third parties while exposing the private medical data of countless patients. Having weighed these and the

remaining considerations regarding proportionality, the Court finds that the requests seeking detailed patient and claims data for IHS are not proportional. Therefore, the Court will GRANT the motions to quash for the listed requests as follows: *Doc. 286* (Request 1); *Doc. 289* (Plaintiff's Request 2, Defendants' Request 1); *Doc. 291* (Request 1); *Doc. 292* (Request 1); *Doc. 334* (Request 1); *Doc. 367* (Request 2).

### b. Market Plans And Market Analyses

Many of the instant disputes arise from the parties' requests for third-party market plans and market analyses regarding the IHS market. Without question, competitors' views and evaluation of the market are relevant to defining a market and evaluating market power. *See e.g., Bon-Ton Stores, Inc. v. May Dep't Stores Co.*, 881 F. Supp. 860, 873 (W.D.N.Y. 1994). However, in this category, the information sought from the third parties is undeniably confidential commercial information. As such, the requesting party must show a substantial need for the material that cannot be otherwise met without undue hardship. Fed. R. Civ. P. 45(d)(3).[2]

Regarding "substantial need," the Court sees a meaningful distinction between confidential documents that relate to prior business plans and/or the market generally (Category 1) versus documents that detail future plans to compete in the market (Category 2). There is a substantial need for some of the documents in Category 1. Typically, the only source for competitors' views of the market is from the competitors

---

[2] The third parties also objected to disclosure of these documents on the basis of undue burden and overbreadth. They have not met their burden to show either. However, they will be entitled to reimbursement of significant expenses from compliance pursuant to Rule 45(d)(2)(B)(ii).

themselves. Moreover, Category 1 material is less sensitive and should be adequately protected by the confidentiality order in place. However, as drafted these requests seek wide swathes of documents which would be burdensome to unearth and, more importantly, would not be substantially necessary. Therefore, while the Court will require disclosure of Category 1 documents responsive to these requests, they shall be limited to: high level strategy and planning documents related to the market identified in the request prepared by the requested party's formal planning and strategic processes, which speak to: (i) entry and exit conditions; (ii) competitive and comparative positions and products offered by the requested party and competitors; (iii) relative size and strength of the requested party and competitors: (iv) consumer sensitivity to change in price; and (v) innovations or developments in the market. As limited, such documents are relevant and substantially necessary.

Disclosure of documents in the Category 2, however, would be potentially devastating to a business. Should such documents be revealed, sanctions for violating the confidentiality would be inadequate to remedy the harm. While relevant to future-looking remedies such as injunctive relief, this category is not as necessary given that the future market can be extrapolated from the market as it has existed over the last several years. Consequently, the Court will grant the third-parties' protection from disclosing documents which detail future plans, but require disclosure of documents

which reveal their general analysis of the market and business plans for years prior to 2015.  Therefore, the Court rules as follows:

      Doc. 285 (Request 12) – NMHC shall disclose Category 1 documents responsive to the request as limited above, except that NMHC need not produce documents which detail business plans[3] for years after 2014.

      Doc. 289/290 (Plaintiff's Requests 4, 5, 7, 8, 14 / Defendants' Requests 2, 3, 7) -- UNMMG shall disclose Category 1 documents responsive to the request as limited above, except that UNMMG need not produce documents which detail business plans for years after 2014.

      Doc. 291 (Requests 2, 3, 4, 7, 10) – Lovelace Health Systems shall disclose Category 1 documents responsive to the request as limited above, except that Lovelace Health Systems need not produce documents which detail business plans for years after 2014.

      Doc. 292 (Requests 2, 3, 7) -- Lovelace Health Plan shall disclose Category 1 documents responsive to the request as limited above, except that Lovelace Health Plan need not produce documents which detail business plans for years after 2014.

      Doc. 334 (Requests 3, 4, 5, 6, 7, 8, 13, 16, 17, 19) -- Lovelace Health System shall disclose Category 1 documents responsive to the request as limited above, except that

---

[3] Herein, the term "business plans" includes "market plans" and "strategic plans."

Lovelace Health Plan need not produce documents which detail business plans for years after 2014.

### c. Specific Requests Regarding Defendants' Conduct

Several contested requests seek documents revealing Defendants' conduct within the relevant markets including the IHS market. The Court understands these objections to be based on the argument that the IHS market is no longer relevant. Having rejected that argument, these objections must be rejected as well. Moreover, to the extent that the third parties object to disclosure of these documents on the basis of undue burden and overbreadth, they have not met their burden to show either. However, they will be entitled to reimbursement of significant expenses from compliance pursuant to Rule 45(d)(2)(B)(ii).

Therefore, the Court will DENY the motions to quash for the listed requests as follows: *Doc. 291* (Requests 5, 8, 9); *Doc. 292* (Requests 4, 5, 6); *Doc. 334* (Requests 11, 14, 15, 18).

### d. Relevant Contracts And Agreements

A few disputed subpoena requests seek contracts with other entities within the three relevant markets discussed herein. The Court finds the requested contracts and agreements to be relevant. Moreover, the requesting parties have shown a substantial need for them. To the extent that the third parties have confidentiality concerns, the Court finds the confidentiality order sufficient to protect their interests.

Therefore, the Court will DENY the motions to quash for the listed requests as follows: *Doc. 285* (Request 16); *Docs. 289/290* (Requests 10, 11).

### e. Remaining Disputes In NMHC's Motion At Doc. 285

In Request 11, Defendants seek "[a]ll documents relating to [NMHC's] marketing and advertising in New Mexico." *Doc. 285-1* at 9. Defendants have offered to narrow the request to "only high-level advertising and marketing documents that would be sufficient to identify [NMHC's] competitors in New Mexico and/or the types of products offered by [NMHC]." *Doc. 321* at 7. As limited, the Court finds the requests to seek relevant information for which there is a substantial need. NMHC has failed to show undue burden to produce the documents. However, NMHC will be entitled to reimbursement of significant expenses from compliance pursuant to Rule 45(d)(2)(B)(ii).

In Request 15, Defendants seek "[d]ocuments sufficient to show the identities of all employers, groups or individuals in the State of New Mexico that have contracts with [NMHC] to provide or administer healthcare coverage or benefits." *Doc. 285-1* at

12

10. As drafted, the request seeks highly confidential commercial information for which there is not a substantial need. However, the Court will require NMHC to provide Defendants through documents or certified responses: (i) the number of individuals for which NMHC provides such services; (ii) the number of employers and groups for which NMHC provides such services; (iii) the date on which NMHC began to provide such services for the employer/group; and (iv) the approximate number of members by employer/group.

### f. Remaining Disputes In UNMMG's Motion At Doc. 289/290

In Plaintiff's Request 3, it seeks data regarding patients who received oncology services from UNMMG. *Doc. 289-2* at 4. At dispute are subparts (d) and (e). Subpart (d) asks for the type of insurance, and subpart (e) asks for the name of the insurance product for which the patient was an enrollee.

UNMMG first argues that providing this information would undermine the Court's earlier order protecting UNMMG from revealing its reimbursement rate agreement with identified payers. *See doc. 223*. However, the Court is unpersuaded that providing subparts (d) and (e) would reveal reimbursement rates. As noted by Plaintiff, the other requested fields do not seek service-specific pricing. Although the Court does not doubt that Plaintiff may be able to divine the insurer's name from the product name in many circumstances, if the information is not tied to a service, it cannot be used to reveal the reimbursement rate for that service. Therefore, it would

not reveal the highly sensitive information that the Court earlier held was entitled to protection.

UNMMG next argues that Plaintiff's request comes after it has expended significant resources producing related data. As such, requiring it to "revisit its dataset to incorporate additional fields of information . . . would be unduly burdensome." *Doc. 290* at 10. While the Court does not find that UNMMG has presented sufficient evidence of undue burden, it will be entitled to reimbursement of significant expenses from compliance pursuant to Rule 45(d)(2)(B)(ii).

Thus, the Court will DENY the motions to quash for Doc. 289/290 (Request 3).

### g. Costs Where Sought

In certain motions and responses, the parties and non-parties have sought costs for filing or responding to the motion. While the Court is convinced that some of the disputes could have been resolved without court intervention, the Court finds that for each, the losing party's position was substantially justified such that costs attendant to the motion should not be assessed. As noted throughout, this fact does not prevent third parties from seeking reimbursement for significant expenses from compliance pursuant to Rule 45(d)(2)(B)(ii).

### IV. CONCLUSION

Herein, the Court has endeavored to resolve all disputes identified by the motions listed at the start that were not withdrawn at the hearing. If this order does not

resolve a pending dispute, the relevant parties should file a notice with the Court identifying the pending dispute. However, further briefing will not be permitted.

**IT IS SO ORDERED**.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE