IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO ONCOLOGY AND
HEMATOLOGY CONSULTANTS, LTD.

    **Plaintiff**

v.                                                                                       Civ. No. 12-526
MV/GBW

PRESBYTERIAN HEALTHCARE SERVICES,
PRESBYTERIAN NETWORK, INC.,
PRESBYTERIAN INSURANCE COMPANY,
INC., and PRESBYTERIAN HEALTH PLAN, INC.

    **Defendants**

## SECOND REPORT AND RECOMMENDATION

**THIS MATTER** comes before the Special Master pursuant to the Court's Order Appointing Special Master, *Doc. 470* and Supplemental Order Appointing Special Master, *Doc. 551*. In this lawsuit, Plaintiff New Mexico Oncology and Hematology Consultants, Ltd. ("NMOHC" or "Plaintiff") has brought claims against Defendants Presbyterian Healthcare Services, Presbyterian Network, Inc., Presbyterian Insurance Company, Inc., and Presbyterian Health Plan, Inc. (collectively "Presbyterian" or "Defendants") alleging various federal and state antitrust claims, as well as other state common law claims. *Doc. 123*. "These claims arise out of [Presbyterian's] alleged use of [its alleged] dominance in the markets for private health insurance and hospital inpatient services to increase [its] power in, and drive Plaintiff out of, the market for comprehensive oncology services." *Doc. 79*. The parties are involved in a discovery dispute regarding Presbyterian's request to clawback an email discussing Presbyterian's eligibility for a federal drug discount program. *See April 12, 2013 email from Diane Fisher, Presbyterian's in-*

*house counsel, to Jim Hinton, President and CEO, Presbyterian, (hereinafter Hinton Email) attached as Exhibit 1 to NMHOC's Objection to Clawback and Motion to Compel. Doc. 575. (Ex Parte)(hereinafter Motion).*

The Procedural History relative to the production of the Hinton Email is set forth in the Special Master's January 28, 2017 Report and Recommendation, *Doc. 604 (hereinafter Report and Recommendation) at 4-6*. Based on that Procedural History and the additional background information provided in the Motion at 8-13 and *Defendants' Response to Plaintiff's Objection to Clawback and Motion to Compel, Doc. 584 (Ex Parte)(hereinafter Response) at 2-6*, it appears that the Hinton Email was first produced in redacted form as part of Presbyterian's original production in January 2016 and identified on Presbyterian's January 22, 2016 Redaction Log. In response to NMHOC's objection, Presbyterian re-reviewed all of the documents on its Privilege and Redaction Logs and produced another 864 documents it had listed on the Redaction Log on April 21, 2016. Subsequently, when NMOHC objected to all of the documents on Presbyterian's Privilege and Redaction Log, Presbyterian re-reviewed the remaining documents on its logs and produced an additional 861 documents that had been on the Privilege or Redaction Logs on April 30, 2016. It is not clear following which of the re-reviews the Hinton Email was produced in un-redacted form, but there is no dispute it was following one of the re-reviews. *Motion at 2-4. See also Declaration of Kate Wallace, Exhibit 1, Defendants' Response to Plaintiff's Opening Brief. Doc. 525 at ¶'s 9, 10 and 17-25 (hereinafter Wallace Declaration)*. Four months after the production of the un-redacted version of the Hinton Email, counsel for NMHOC used the email to cross-examine Mr. Hinton at his deposition taken on August 30, 2016. *Motion at 3*. Two

days after the deposition counsel for NMOHC sent counsel for Presbyterian a letter seeking to clawback the email. *Motion Exhibit 2.*[1]

Presbyterian now claims the Hinton Email was produced by "inadvertence, mistake or other error" and wants to clawback the email pursuant to the terms of the Stipulated Protective Order entered into by the parties (*Stipulated Protective Order Doc. 93,* ¶ 25) (hereinafter Protective Order) or under the provisions of Fed. R. Evid. 502(b). For the reasons set forth below and detailed in the Report and Recommendation at 22-23, the arguments set forth by Presbyterian are rejected and the Special Master finds that the production of the Hinton Email was intentional and therefore constitutes a waiver of any claimed privilege.

## Production of the Hinton Email

As it did in the briefing on the waiver issues addressed in the Report and Recommendation, Presbyterian relies on the large number of documents reviewed and the amount of time involved in its "re-reviews" to support its claim that the production of the Hinton Email was the result of "inadvertence, mistake, or other error" under the Protective Order. Unfortunately, Presbyterian's argument is self defeating. As detailed in the Procedural History, Presbyterian originally hired "dozens of contract lawyers" to initially review the 600,000 documents it felt might be responsive to NMOHC's requests for production. *Wallace Declaration* ¶ 20. "Documents that were possibly privileged were first segregated by contract attorneys and further inquiry was made to determine their status. The final determinations as to privilege were then logged into an electronic database." *Wallace Declaration* ¶ 39. "This *monumental* review was accomplished in three months at considerable expense." (Emphasis added). *Response at 2. See also Wallace Declaration* ¶ 20 *and Defendants' Response to*

---

[1] The clawback letter only mentions that Presbyterian "inadvertently produced certain documents that were not accurately redacted to protect Presbyterian's privilege information."

3

*Plaintiff's Opening Brief on Waiver at 7-8.* Later, in response to NMOHC's objections, Presbyterian conducted re-reviews of all of the documents on its Privilege and Redaction Logs. "In April 2016 ... Presbyterian reviewed 4143 documents within three weeks. This was a *massive* undertaking, not only in terms of the volume of documents, but also because the review entailed evaluating whether in-house counsel was dispensing legal or business advice." (Emphasis added). *Response at 9-10.*

Ironically, the "contract lawyers" were able to select the Hinton Email for attorney client protection and redacting on three occasions during their review of 600,000 documents. It is not known when during the document review the "dozen of contract lawyers" determined that the Hinton Email should be protected or where the email was found in the 600,000 documents, but it was found three times and after "further inquiry" it was determined to be privileged, logged into the electronic database and placed on the Redaction Log. In contrast, Presbyterian's retained counsel in this case, Jones Day, conducted a re-review of a much smaller universe of documents (4143 as opposed to 600,000, only 1402 of which contained redactions) over a three week period of time. It is not known how many lawyers were involved in the re-reviews, but presumably Jones Day used as many lawyers at it felt was necessary to complete the re-reviews within its self-imposed time limits.[2] However, the number of attorneys is no more important than the time

---

[2] When NMOHC initially objected to 2831 documents on the Privilege and Redaction Logs, Presbyterian offered to conduct a "re-review on an expedited schedule" during a telephone conference with counsel on April 8, 2016. "That effort was so substantial that by April 14th Presbyterian reported that it was ahead of schedule." At an April 15, 2016 status conference with Judge Wormuth, "Presbyterian reiterated its commitment" and Judge Wormuth ordered Presbyterian to proceed in that manner. As a result, on April 18th, ten days after initially proposing a re-review, Presbyterian produced 1095 documents that had previously been listed on the privilege log. Three days later Presbyterian produced 864 additional documents from the redaction log. "On April 25, 2016 when NMOHC objected to the remaining documents on the Privilege and Redaction Log, Presbyterian "agreed to re-review the remaining documents on it logs." Presbyterian "completed its re-review of the remaining 1312 documents, and produced

4

frame in view of Presbyterian's repeated representations that it conducted a "document by document" review and that it "carefully reviewed each document." *Special Master's January 28, 2017 Report and Recommendation at 23.*

### Protective Order

Presbyterian places great reliance on the Protective Order to support its clawback argument and claims it is dispositive of the issue.[3] The language relied on by Presbyterian is as follows:

> Any discovery documents produced in this litigation may be later designated as "Attorney-Client Privileged" or "Attorney Work Product" promptly upon discovery by the producing party that any such privileged or immune document was produced through <u>inadvertence, mistake, or other error</u>, and no waiver o[f] privilege or immunity shall be deemed to have occurred. (Emphasis added).

Nowhere in the Protective Order are the terms inadvertence, mistake or other error defined. In contrast, the Protective Order, which is thirteen pages long, goes into great detail to define terms such as "qualified protective order," "confidential," "serious harm," and "confidential material." The Protective Order also specifies who can have access to the documents and how to treat confidential documents used at a deposition and designate portions of the deposition transcript as confidential. In addition, the Protective Order contains requirements on how to use confidential documents in motion practice and the procedure to follow if one party believes the terms of the Protective Order have been violated. The Protective Order is also lacking in that it provides no

---

861 of these within five days." *Defendants' Response to Plaintiff's Opening Brief on Waiver, Doc. 525 at 8-10.*

[3] It is interesting to note as pointed out by NMOHC that "Presbyterian previously relied on the inadvertence standard under F.R.E. 502 when seeking claw-back of other records. Presbyterian Resp. Br. Re Waiver at 29-35 [ECF No. 525] (seeking to apply Rule 502 inadvertence standard to request claw-back of exhibits submitted with NMOHC's Opening Brief on Waiver)." NMOHC Reply in Support of Objection to Clawback and Motion to Compel, *Doc. 598 at 6. fn 5. (hereinafter Reply).*

5

directives or agreements regarding the three prongs of Rule 502 (b), Fed. R. Civ. P., which deal with inadvertent disclosure.

> The disclosure of a privileged document normally operates as a waiver unless three conditions are satisfied: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."

*Conceptus, Inc. v. Hologic Inc.*, No. C 09-02280 WHA, 2010 WL 3911943, at *1 (N.D.Cal. Oct. 5, 2010). "The party claiming that...disclosure was inadvertent bears the burden of proving that each of the three elements of Rule 502(b) has been met." *Williams v. District of Columbia*, 806 F.Supp.2d 44, 48 (D.D.C. 2011). *Motion at 14.* In its Response, Presbyterian argues that:

> When a protective order is in place, the "terms of the Protective Order, and not the default provisions of Federal Rule of Evidence 502, govern the handling of inadvertent productions." *Rajala*, 2013 WL 50200, at *5; *see also Gilday v. Kenra, Ltd.*, 1:09-cv-229-TWP-TAB, 2010 U.S. Dist. LEXIC 106310, at *12 n.3 (S.D. Ind. Oct. 4, 2010)("Rule 502 does not apply if the parties have their own agreement regarding inadvertent disclosure of privileged documents."); *Alcon Mfg. v. Apotex, Inc.*, No. 1:06-cv-1642-RLY-TAB, 2008 U.S. Dist. LEXIS 96630 (S.D. Ind. Nov 26, 2008)(ordering the clawback of privileged documents based on compliance with the protective order rather than Rule 502(b)).

*Response at 7.* NMOHC responds in its Reply as follows:

> Moreover, while "Rule 502 recognizes that this basic test under Rule 502(b) may be superseded by court order or agreement of the parties, ... to find that a court order or agreement under Rule 502(b) or (e) supplants the default Rule 502(b) test, courts have required that concrete directives be included in court order or agreement regarding each prong of Rule 502(b)." *U.S. Home Corp. v. Settlers Crossing, LLC*, Civ.A.DKC 80-1863, 2012 WL 3025111, at 6* (D. Md. July 23, 2012.) "In other words, <u>if a court order or agreement does not provide adequate detail regarding what constitutes inadvertence</u>, what precautionary measures are required, and what the producing party's post-production responsibilities are to escape waiver, <u>the court will default to Rule 502(b) to fill in the gaps in controlling law.</u>" *Id.* emphasis added), citing *Mt. Hawley Ins. Co. v. Felman Prod., Inc.* 271 F.R.D. 125, 130, 133 (S.D.W.Va. 2010) (following the parties' agreement regarding post-production responsibilities, but reverting to Rule 502(b)(2) regarding required precautionary measures because the agreement was silent on that prong); *United States. Sensient Colors, Inc.*, No. 07-1275 (JHR/JS), 2009 WL 2905474, at *2 (D.N.J. Sept. 9, 2009) (applying Rule 502(b) despite a

6

general non-waiver agreement, in part, because "[n]owhere in the [agreement] does it mention that the parties are excused f[ro]m the requirements of Federal Rule of Evidence 502(b)"); *Waste Connections of N. Carolina, Inc. v. K.R. Drenth Trucking, Inc.,* 3:14-CV-642, 2015 WL 464283, at *3 (W.D.N.C. Aug. 5, 2015)(where the protective order equates inadvertent production with mistaken production and requires the producing party to "promptly" notify the receiving party when it learns it mistakenly disclosed privileged documents, but is silent as to precautionary measures that parties must take in order to avoid mistakenly producing privileged documents, 502(b) controls with regards to determining whether Plaintiff took adequate precautions to prevent mistaken disclosure).

*Reply at 7-8.*

To support its argument for the use of a no-waiver provision in an agreement or court order, Presbyterian cites *Rajala v. McGuie Woods, LLP,* CIV.A. 08-2683-CM, 2013 WL 50200, which involves a clawback agreement that was entered into to "permit the parties to conduct and respond to discovery in an expedious manner, *without the need for time-consuming and costly pre-production privilege review.*" (Emphasis added.) *Id. at* *4. The opinion in *Rajala,* written by one of the Special Master's former colleagues in the Tenth Circuit, contains an excellent review of the history and use of "clawback" provisions under both Rule 502(b) and protective orders. As Judge Waxse points out, the Advisory Committee Explanatory Note to Rule 502(b) makes it clear that "the court order <u>may</u> provide for return of documents without waiver <u>irrespective of the care taken</u> by the disclosing party; the rule contemplates enforcement of 'clawback' and 'quick peek' arrangements as a way to avoid the excessive costs of preproduction review for privilege and work produce."[4] (Emphasis added.) *Id. at 4.* Judge Waxse went on to rule that "[t]he terms of the Protective Order, and not the default provisions of Federal Rule 502 govern the handling of inadvertent production in this case." *Id. at 7.* But *Rajala* is easily distinguished from our case since it did not involve extensive pre-production review and

---

[4] It is important to note here that the Protective Oder in this case provided that the producing party has to show that the document was produced as a result of "inadvertence, mistake or other error."

7

subsequent re-reviews and when the document in question was produced, counsel were not aware that the document in question contained privileged communication. Finally Judge Waxse found that the production of the document was unintentional.

*Alcon Mfg. v. Apotex, Inc.,* No. 1:06-cv-1642-RLY-TAB, 2008 U.S. Dist. LEXIS 96630 (S.D. Ind. Nov 26, 2008), another case relied on by Presbyterian where the Court ruled a Protective Order was controlling, can also be easily distinguished. That case also involved a situation where the producing party had not done an extensive pre-production review for privilege. The Court noted, "[p]erhaps the situation at hand could have been avoided had Plaintiff's counsel meticulously double or triple checked all disclosures against the privilege log prior to disclosure. However, this type of extensive painstaking review is precisely what new Evidence *Rule 502* and the protective order in this case were designed to avoid." *Id. at 6.* The Special Master would also note that counsel for the producing party also explained to the Court that the inadvertent production was the result of an "electronic break error." Finally, the Court ruled based on the representations of counsel the production was inadvertent.

The third case cited by Presbyterian, *Gilday v. Kenra, Ltd.,* 1:09-cv-229-TWP-TAB, 2010 U.S. Dist. LEXIC 106310, can also be distinguished. As in *Alcon,* the court in *Gilday* found "there is no question Kendra did not intentionally produce the privileged documents." *Id. at 4.* Also like in *Alcon,* the *Gilday* court stated, "[o]f course had Kendra's counsel double- or triple-checked its privilege log against its production, this whole argument may have been avoided." *Id. at 5.*

Unlike the cases cited by Presbyterian, the instant case involved three levels of careful "document by document" review for attorney client privilege and work product protection. Presbyterian itself describes the pre-production review as *monumental* and the re-reviews as

8

*massive* undertakings to avoid the inadvertent or mistaken production of privileged or work product protected documents. To begin with counsel for Presbyterian and NMOHC went through an extensive meet and confer process before agreeing on search terms in an effort to narrow the universe of documents that each side would have to review for production. Presbyterian then spent three months reviewing and designating documents for production or inclusion on privilege or redaction logs. Subsequently when NMOHC objected to their Privilege and Redaction Logs, Presbyterian conducted additional re-reviews. The bottom line is that unlike the typical case where clawback agreements are entered into to avoid the time and expense of extensive pre-production reviews and designation for attorney client privilege or work product protection, Presbyterian was involved on three occasions in conducting careful "document by document" reviews during which it "carefully reviewed each document."

Even if the Special Master gives Presbyterian the benefit of the use of the Protective Order as controlling, it cannot prevail. The Protective Order requires that for a document to be clawed back it must have been "produced through inadvertence, mistake or other error." As stated by the Special Master in the Report and Recommendation at 23, "Presbyterian has produced no evidence that the production of the documents in question was as a result of 'inadvertence, mistake or other error.'" Likewise, in its Response to the Motion, Presbyterian has offered no evidence or support for its argument that the Hinton Email was produced as a result of "inadvertence, mistake or other error."[5]

---

[5] As in its briefing on the waiver issues, Presbyterian relies entirely on the *Wallace Declaration*. But the *Wallace Declaration* is nothing more than a conclusory statement lacking in detail as to why the redaction on the Hinton Email were removed, who removed them and placed the un-redacted version in the electronic repository and how the email was inadvertently or mistakenly produced. "Indeed, were courts to accept conclusory statements of this kind; it is difficult to imagine circumstances when Rule 502(b) would *not* apply so long as any privilege review, no

Presbyterian takes the position that the "reasonableness test" of Rule 502(b) does not apply to the Protective Order. Again giving Presbyterian the benefit of the doubt that the "reasonableness test" does not apply, it offers no alternative basis on which to determine whether the Hinton Email was produced as a result of "inadvertence, mistake or other error." In effect Presbyterian seems to be saying "take my word for it." But no matter how many times you repeat it, saying the Hinton Email was produced by "inadvertence, mistake or other error" doesn't make it so.

Presbyterian takes inconsistent positions by saying it "carefully reviewed each document" "document by document" and yet somehow the Hinton Email was produced without redactions as a result of the re-reviews. Presbyterian cannot credibly say it missed or overlooked the Hinton Email by "inadvertence, mistake or other error" since the redaction were removed and the email was then placed in the electronic repository in the "un-redacted version" before it was produced. *Motion at 10.* Removing the redactions and placing the un-redacted version in the electronic repository did not happen by accident or mistake, nor was its production inadvertent. These intentional acts were done by someone who "carefully reviewed each document" "document by document" during one of the re-reviews. Presbyterian has offered no explanation as to how or why this happened. Regardless of what test is to be applied under the Protective Order, Presbyterian was obliged at a minimum to offer some explanation or excuse as to how this happened, why it happened and who was responsible. All we know is when it happened; *i.e.*, during the re-reviews of the redacted documents. The only conclusion the Special Master can come to is that someone looked at the Hinton Email three times and decided that the redactions

---

matter how cursory or unreasonable." *Williams v. District of Columbia,* 806 F. Supp. 2d 44, 51 (D.D.C. 2011). The same analogy applies to the Protective Order in this case.

could be removed, placed the un-redacted documents in the electronic repository and then produced them without the redactions.[6]

Since the Protective Order and Presbyterian's Response is silent on what "inadvertence" or "mistake" means, the Special Master dusted off his old copy of Black's Law Dictionary for help in defining these terms. According to Black's Law Dictionary, 903 (4th ed. 1951), "inadvertence" means "heedlessness, lack of attention, want of care, or carelessness." *See also New Bank of New England v. Marine Midland Realty Corp.,* 138 F.R.D. 479, 483 (E.D.Va. 1991) ("Inadvertent disclosures are, by definition, an unintentional act."). According to Black's Law Dictionary, "mistake" means some unintentional act, omission or error arising out of ignorance, surprise, imposition or misplaced confidence." Black's Law Dictionary, 1152 (4th ed. 1951). Clearly given Presbyterian's representation that it "carefully" reviewed each document, "document by document," removed the redactions and re-entered the un-redacted document in the electronic repository, the un-redaction of the Hinton Email was not inadvertent. This leaves Presbyterian with the argument that the Hinton Email was "mistakenly reclassified and produced in redacted form." *Response at 10*. But Presbyterian's careful "document by document" review doesn't meet Black's Law Dictionary's definition of mistake. What Presbyterian really seems to be saying is that "inadvertence, mistake or other error" means that I gave you something I shouldn't have or wish I had not and now I want it back. In effect, Presbyterian is arguing that it can clawback the Hinton Email "for any reason or no reason at all," but that is not what the Protective Order says and the Special Master is not willing to go that far. Nor is the Special

---

[6] The Special Master is not persuaded by Presbyterian's argument that the Hinton Email was not really produced three times because the documents in question have sequential bates numbering. To the contrary during the careful "document by document" review, the redaction and entry into the electronic repository was done not once but for all three documents which means that the alleged production as a result of "inadvertence, mistake or error" had to have occurred three times.

Master willing to include a purposeful and reasoned determination to remove the redactions and produce the Hinton Email within the meaning of mistake or other error.

The irony of the situation Presbyterian finds itself in can be summarized as follows: Presbyterian insisted that it be allowed to re-review documents on its Privilege and Redaction Logs because it believed its dozens of contract lawyers over-designated for attorney client privilege. As a result of the re-reviews, attorneys for Jones Day made a determination that the redactions placed on the Hinton Email by the contract lawyers could be removed and the un-redacted email was entered into the electronic repository. Now Presbyterian wants to put the contract lawyers redactions back because they claim the redactions were removed and the document produced as a result of "inadvertence, mistake or other error." This is asking too much.

### The Deposition

Presbyterian claims that "it was during the deposition of Mr. Hinton that Presbyterian learned of the mistaken production of the Hinton Email." *Response at 13.* A closer look at the transcript of the Hinton deposition reveals that the production of the Hinton Email was actually discovered the day before the deposition. *Response Exhibit A at p. 482 l. 11-13.*

| | |
|---|---|
| MR. LeVEE: | George, let me just say, I saw this document <u>yesterday</u> and immediately became concerned that it is privileged and was produced inadvertently. (Emphasis added). |
| | I'm going to let you ask Mr. Hinton questions about it, since we're here and I don't want to have to risk having you ask Mr. Hinton questions again, but the document actually says right in the middle there "attorney-client privileged." |
| MR. SANDERS: | Oh, I know, but it was produced and we've gotten claw-back requests -- |
| MR. LeVEE: | Yeah. |

12

| | |
|---|---|
| MR. SANDERS: | -- that we've complied with, so I didn't -- I just assumed that someone make a determination that this was not, in fact, a privileged communication. |
| (Dr. McAneny now present.) | |
| MR. LeVEE: | I -- when I saw it yesterday I thought that only portions of it were privileged and portions were not, but I did not have a change to deal with what might be the privileged portions. |
| | So as I said, let's -- I'm -- do want you to go ahead with your examination -- |
| MR. SANDERS: | Sure. |
| MR. LeVEE: | -- and I do want to reserve the right to ask that portions of the document be redacted for privilege if we later determine that they should be. |
| | You obviously got the document, so you and I can then have a debate over whether the privilege is applicable. |
| MR. SANDERS: | Yeah, just send me a letter and we'll -- and we'll respond, I mean, and -- |
| MR. LeVEE: | Thank you. |

*Response Ex. 1 at pp. 482-483.* This begs the question of whether Presbyterian's lawyer should have raised the clawback issue before the deposition started (or resumed if it was not the first day). In any event once the issue was raised at the deposition, NMOHC claims that Presbyterian's lawyer waived any privilege by allowing NMHOC's lawyer to use the email during Mr. Hinton's deposition. In fairness to Presbyterian's lawyer, he tried to preserve the privilege by raising the issue and reserving the right to ask that "portions of the document be redacted for privilege if we later determine that they should be." Presbyterian believes there was an agreement to proceed on that basis based on the following exchange:

| | |
|---|---|
| MR. LeVEE: | -- you obviously got the document, so you and I can then have a debate over whether the privilege is applicable. |
| MR. SANDERS: | -- *Yeah*, just send me a letter and we'll respond, I mean, and – (Emphasis added.) |
| MR. LeVEE: | Thank you. |

*Id at 483.* Later on in the deposition, it becomes clear that the attorney for NMOHC did not intend to agree that Presbyterian reserved its right to argue that production of the Hinton Email did not waive the privilege.

| | |
|---|---|
| MR. LeVEE: | So earlier today, George, we were talking about Exhibit 1148, which the document that contains the exchange between Diane Fisher and Mr. Hinton, and I was concerned about privilege. |
| | I'm -- I actually do think that portions of the document on the first page are privileged, but if you -- if you are comfortable that you would not claim any waiver associated with the privilege, which I suspect you will do, then we will not ask to claw back the document, we won't have any issue with the testimony. |
| MR. SANDERS: | Well, unfortunately, I can't -- I can't agree to that, not at this time -- |
| MR. LeVEE: | Yeah. |
| MR. SANDERS: | -- I mean. But I think we're just going to have to – we're just going to have to deal with – I mean, if you're going to send a claw-back letter, we'll just have to deal with that. |
| MR. LeVEE: | Fine. Then we'll send a letter. |
| MR. SANDERS: | I understand, but I just can't agree to that right now. |

*NMOHC's Reply in Support of Objection to Claw-back and Motion to Compel. Ex. 1 at pp. 560-561.* The question then becomes if there was not an agreement to allow NMOHC's lawyer to use the Hinton Email during the deposition without Presbyterian waiving its claim of privilege, what was the effect of using the email to question Mr. Hinton? The Special Master was not provided

14

with that portion of the deposition where Mr. Hinton was questioned about the email. Presumably Presbyterian's lawyer did not object to each question or instruct Mr. Hinton not to answer on the grounds of privilege as permitted under Rule 30(c)(2) Fed. R. Civ. P.

Presbyterian takes the position in its Response that the lawyer for NMOHC agreed to proceed without Presbyterian waiving its right to claim the Hinton Email is privileged and claw it back. NMOHC takes the position that "Presbyterian's decision to allow Mr. Hinton to be deposed about the email while attempting to reserve the objection can itself be an independent waiver." *Reply at 8.* For its argument, NMHOC relies on *Certain Underwriters at Lloyd's London v. Natl. R.R. Passenger Corp.*, 14-cv-4717(FB), 2016 WL 6875968 (E.D.N.Y. Nov. 17, 2016). As a starting point, counsel in that case agreed "that the purpose of the language in the non-waiver provision was to streamline and expedite Amtrak's initial production of responsive documents accumulated over many decades without having to undertake 'a document-by-document review' or 'a privilege review of any kind.'" *Id. at 4.* After the production of documents, counsel for plaintiff was deposing an Amtrak employee and introduced a document "which Amtrak had initially withheld as privileged but thereafter designated as confidential and produced to LMI (Plaintiff) upon withdrawing its privilege claim…Amtrak's counsel noted the document was labeled 'work product' and stated, 'I don't know if this is something that we produced on the [privilege] log after motion practice but I will reserve Amtrak's right' … [H]e nevertheless allowed questioning about the document to proceed." *Id. at 4.* Amtrak's counsel lodged objections throughout the deposition but he did not specifically assert that the document "was privileged or otherwise exempt from disclosure." The day after the deposition, Amtrak's counsel sent a letter to all parties "clawing back" the documents in question and asserting attorney client privilege and work product protection. *Id. at 5.* In argument on its motion to

required Amtrak to reproduce the documents, plaintiff argued that Amtrak waived any privilege by permitting its witness to testify about the documents and that the privilege was waived when Amtrak "intentionally produced that document in the course of revising its privilege log." Id. at 5. In ruling that Amtrak waived any privilege or work product protection the court stated:

> By their terms, Rule 502(d) and (e) apply only to waiver in connection with *disclosures,* and say nothing of waiver by other means. Accordingly, while an appropriately worded protective order may prevent waiver due to a producing party's *disclosure* of privileged information, that party's subsequent failure to timely and specifically object to the *use* of that information—*can* waive any applicable privilege...Here, Amtrak has waived privilege and work-product protection for Exhibits 26 and 44 by failing to seek to preclude their introduction and use at the Noonan deposition. Though Amtrak is arguably correct that the protective order does not provide for waiver based on the mere *disclosure* of privileged information, nothing in the protective order speaks to the situation at issue here, where Amtrak failed to timely and specifically object to party's *use* of privileged material...Amtrak's counsel noted at the time that Exhibit 26 was labeled "work product," and purported to "reserve [ ] Amtrak's right[,]" but nevertheless permitted questioning about the document to proceed. Id., Ex. A, at 216:6-9. Generalized objections of this kind are insufficient to preserve a claim of privilege. See, e.g., Hologram USA, 2016 WL 3654285, at *2-3; Wells Fargo Bank, 2015 WL 5051679, at *4 & n.6.

Id. at 6-7.

Thus, although there is precedent for finding a waiver by failing to specifically and continually object to the use of a document which counsel believes is privileged, the Special Master is not willing to go that far in this case. Here, there is a legitimate dispute about whether counsel for Presbyterian had reached an agreement that counsel for NMOHC could use the email to question Mr. Hinton with Presbyterian reserving its right to ask that portions of the document be redacted. It was not until later in the deposition after counsel questioned Mr. Hinton about the email that counsel for NMOHC made it clear he could not agree to allow Presbyterian to re-redact portions of the Hinton Email. Under the circumstances, the Special Master is not willing

16

to make a finding that by allowing counsel for NMOHC to use the Hinton Email at Mr. Hinton's deposition, Presbyterian waived any privilege attached to the email.

### Conclusions

The Special Master finds that the Hinton Email was not produced in un-redacted form as a result of "inadvertence, mistake, or other error" under the terms of the Protective Order or through mere inadvertence under Rule 502(b). To the contrary, the Special Master finds that the Hinton Email was intentionally produced and therefore any privilege or protection regarding its use has been waived. Accordingly, the Special Master recommends that NMOHC's Objection to Clawback and Motion to Compel be granted and that Presbyterian's request to clawback the Hinton Email be denied. As a result, the Special Master recommends that all iterations of the Hinton Email be produced in un-redacted form. Finally, the Special Master recommends that NMOHC be awarded reasonable costs and fees for having to file this Motion and that Presbyterian be required to pay the Special Master's fee in connection with this Second Report and Recommendation.

_____
Alan C. Torgerson
Special Master

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2017, I electronically submitted the foregoing to the Honorable Gregory B. Wormuth and Counsel listed below. Also the original was submitted to the Honorable Gregory B. Wormuth by regular mail.

George M. Sanders
150 N. Michigan Avenue
Suite 2800
Chicago, IL 60601
gsanders@gmslaw.net

Travis Jackson
Geoffrey Rieder
201 Third Street, NW
Suite 3100
P.O. Box 1607
Albuquerque, NM 87103-1607
travis@frjlaw.com
geoff@frjlaw.com
*Counsel for Plaintiffs*

-and-

Bruce Hall
Charles K. Purcell
Post Office Box 1888
Albuquerque, NM 87103
bhall@rodey.com
kpurcell@rodey.com

JONES DAY
Jeffrey A. LeVee
Kate Wallace
Matthew Accornero
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
jlevee@jonesday.com
kwallace@jonesday.com
*Counsel for Defendants*

/s/ Alan C. Torgerson

Alan C. Torgerson
Special Master