# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO ONCOLOGY AND HEMATOLOGY
CONSULTANTS, LTD.,

    Plaintiff,

v.                                                            Civ. No. 12-526 MV/GBW

PRESBYTERIAN HEALTHCARE SERVICES, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court pursuant to the Court's adoption (*doc. 814*) of the Magistrate Judge's Findings and Recommended Disposition (*doc. 745*), thereby ordering Defendants to pay Plaintiff 75% of the costs associated with its Motion for Sanctions (*doc. 673*), Plaintiff's Fee Affidavit seeking $629,871.23 in costs (*doc. 820*), and Defendants' Objections to Plaintiff's Fee Affidavit (*doc. 823*). For the following reasons, the Court awards Plaintiff **$499,335.99**.

**I.    BACKGROUND**

The procedural history in this case is extensive, and the Court only briefly recites those facts relevant to the instant issue here. On November 7, 2016, Plaintiff became concerned by Defendants' disclosures, expressed its concern to Defendants, and began to investigate potential discovery violations. *Doc. 820* at 7.

After months of thorough review and investigation, with significant assistance from

experts, Plaintiff filed its Motion for Sanctions on May 17, 2017. *Doc. 673*. The Court held a hearing on the Motion on July 25, 2017, and heard oral argument on August 2, 2017. *Docs. 732, 736*. On August 16, 2017, in his Proposed Findings and Recommended Disposition, the Magistrate Judge recommended the following:

> I find that Defendants' negligence resulted in many of the errors in producing ESI which caused Plaintiff to believe the instant motion to be necessary. . . .Therefore, I recommend that Defendants be ordered to pay Plaintiff 75% of the costs associated with its Motion for Sanctions (*doc.673*),[1] including all fees paid to expert witnesses to prepare reports and testify at the motion hearing.

*Id.* at 34. [2]

---

[1] However, this total shall not include the fees and costs associated with the preparation and filing of the motions in limine found at *docs.697* and *doc. 699*.

[2] In support, the Magistrate Judge stated,
 I find that Defendants were negligent in their production of ESI in the course of litigation. Moreover, their response to the issues raised by Plaintiff [was] inadequate to quell Plaintiff's justifiably rising suspicion. . . . Defendants committed the following errors in producing ESI:
 a. Defendants' IT department failed to implement the May 2012 litigation hold on ESI. . . and it is uncertain whether the IT department even implemented the March 2013 litigation hold at any point.
 b. Defendants failed to ensure that the export process would create quality information for use in litigation. Defendants failed to notice T Systems's error until Plaintiff asked for the location of an email which it believed should have been located within the Gerard PST[.]
 c. Defendants, through T Systems, likely either used a hard drive containing dirty target media or conducted a recollection on a hard drive which contained email fragments from a previous failed collection.
 d. Defendants, through T-Systems and Mr. Narvaez, failed to properly record the chain of custody for the hard drives containing the server PST exports.
 e. Defendants, through T Systems and Mr. Narvaez, failed to accurately describe the collection method used to export the Gerard PST. Mr. Narvaez described a client-side collection, yet the logs demonstrate that he actually conducted a server-side collection.
 f. Defendants failed to discover the export logs until March 2017[,] several months after Plaintiff began questioning the efficacy of Defendants' expert procedures and the existence of such logs. This delay necessitated Plaintiff's filing of the Motion for Sanctions without the benefit of a crucial piece of evidence.

2

The Court adopted the Magistrate Judge's Proposed Findings and Recommended Disposition, and overruled Plaintiff's Objections thereto on February 21, 2018, *doc. 756*, thereby ordering Defendants to pay Plaintiff 75% of the costs associated with its Motion for Sanctions. *Doc. 814*. In response, Plaintiff filed its Fee Affidavit on June 26, 2018, seeking $629,871.23 in costs. *Doc. 820*. Defendants filed their objections to Plaintiff's Fee affidavit on July 6, 2018, requesting that Plaintiff's fee award be reduced to $61,173.46. *Doc. 823*. The matter of the reasonableness of Plaintiff's Fee Affidavit is now before the Court.

**II.    LEGAL STANDARD**

To determine reasonable attorney fees, the Court "must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).[3] It is Plaintiffs' burden "to prove and establish the reasonableness of each dollar, each hour, above zero." *Mares v. Credit Bureau of Raton*, 801 F. 2d 1197, 1210 (10th Cir. 1986).

---

g. Defendants collected documents from the wrong Mike West, which caused the Court to order a second deposition of Mike West as well as additional depositions of other employees in order to follow-up on information gathered during the second Mike West deposition.

*Doc. 745* at 33-34.

[3] Although the lodestar framework generally applies in the statutory fee award context, courts have also applied the lodestar calculation to determine whether attorney fees are reasonable in the context of sanctions. *See White v. Gen. Motors Corp.*, 908 F.2d 675, 684-85 (10th Cir. 1990).

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Exkerhart*, 461 U.S. 424, 434 (1983). The Court should, therefore, exclude hours not "reasonably expended," and although "[t]here is no precise rule or formula for making these determinations[, t]he court necessarily has discretion in making this equitable judgment." *Id.* at 434-437. Notably, "a district court does not abuse its discretion in reducing a plaintiff's fee request when the request is based on time records that are rather sloppy and imprecise." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284-85 (10th Cir. 1998). However, the district court may not merely "eyeball the fee request and cut it down by an arbitrary percentage." *Id.* at 1281 (internal quotations and citations omitted).

### III. ANALYSIS

Defendants object to Plaintiff's fee affidavit on various grounds. *Doc. 823*. The Court will address each of these objections, in turn.

**A. The parameters of Plaintiff's fee award are limited to 75% of those costs and fees associated with Plaintiff's Motion for Sanctions.**

First, Defendants correctly highlight that Plaintiff is only entitled to recover "75% of the costs associated with its Motion for Sanctions, including all fees paid to expert witnesses to prepare reports and testify at the motion hearing." *Doc. 745 at 34; doc. 823 at 8*. Here, even though Plaintiff only seeks to recover 75% of its attorney fees in its fee affidavit, Plaintiff nevertheless requests reimbursement of 100% of other costs. *See doc.*

4

*820-7*. Specifically, Plaintiff attempts to recover 100% of its costs related to contract work performed by Sam Joseph, in the amount of $99,285.00. *Id*. In the same vein, Plaintiff seeks $301,183.17 for its "other" costs, constituting 100% of the initial figure. *Id.* Defendants are specifically ordered to pay Plaintiff only 75% of its fees and costs, *including* those fees paid to experts. Meaning, all fees and costs that Plaintiff seeks to recover must be reduced to 75% of their original value, regardless of their origin. Therefore, after reducing the $99,285.00 and $301,183.17 amounts by 25%, equaling a $24,821.25 and $75,295.79 decrease, respectively, Plaintiff may only recover, at most, $529,754.19, prior to considering Defendants' remaining objections, rather than the $629,871.23 quantity that Plaintiff requests.

**B. Plaintiff is entitled to fees resulting from its investigatory work, including that performed by experts, which was precipitated by Defendants' negligence, and necessary to prepare its Motion for Sanctions.**

Second, Defendants contend that Plaintiff may not recover fees associated with its investigatory work, including contributions by experts, which led to its Motion for Sanctions. *Doc. 823* at 8-11. In doing so, Defendants incorrectly conflate Plaintiff's right to recover fees related to its investigation of Defendants' alleged discovery violations in association with its Motion for Sanctions, and its right to recover fees related to discovery, generally.

The Court held, in adopting the Magistrate Judge's Proposed Findings and Recommended Disposition, that Plaintiff was entitled to recover the former, but not the

5

latter. *See doc. 814.* It determined that allowing recovery of such fees was in the interests of justice, because Plaintiff engaged in arduous and extremely costly analysis and research, including the hiring of experts, to investigate Defendants' alleged discovery violations, which it would not have performed, but for Defendants' negligence. *See doc. 747* at 99 ("I can't imagine the undertaking [by] Mr. Sanders [of] cross-referencing and needing to figure out [if he was] missing complete documents. . . And I don't think that his concerns early on were taken particularly seriously.").

Further, because performance of such investigatory work was essential to Plaintiff's discovery of the information upon which Plaintiff's Motion for Sanctions is founded, fees resulting from this work are undoubtedly "associated with [Plaintiff's] Motion for Sanctions." Because the Court has ordered Defendant to pay Plaintiff 75% of its "costs associated with its Motion for Sanctions," the Court finds that it is appropriate for Plaintiff to recover those fees arising out of pre-drafting investigatory work related to its Motion for Sanctions. Therefore, the Court overrules Defendants' objection.

### C. Plaintiff may not recover fees associated with its Motions in Limine or other Motions unrelated to its Motion for Sanctions.

Third, Defendants correctly note that Plaintiff's recovery "shall not include the fees and costs associated with the preparation and filing of the motions in limine found at *docs. 697* and *doc. 699*[,]" or fees and costs related to the preparation of other motions. *Doc. 745* at 34 n.6; *doc. 823* at 12-14. However, a review of Plaintiff's fee affidavit reveals that Plaintiff included fees related to its Motions in Limine, research on the privilege

6

waiver issue, and its Motion to Bar Unjust Enrichment. *Doc. 820-3* at 6-11, 39, 46-57.

Specifically, from June 12, 2017 through July 5, 2017, attorney John Yetter billed $17,641.50 for work related to the two Motions in Limine. *Id*. at 46-50. Additionally, Mr. Yetter billed $598.50 for time spent researching the privilege waiver, which was the subject of a separate fee application and cannot be recovered twice. *Id.* at 52. Subsequently, Mr. Yetter also billed $1,254 to "finish a draft of Reply to Motion to Bar Unjust Enrichment." *Id.* at 53. These fees, adding up to $19,494, are not recoverable as a part of Plaintiff's fee award.

Similarly, Plaintiff's fee affidavit includes bills from attorney Brian Coughlin, paralegal Juan Estrada, and associate Sukjamnjit Kaur in the amounts of $5,056, $33, and $1,125, respectively, for work related to Plaintiff's Motions in Limine. *Id.* at 6-11, 39, 55-57. These fees are equally unrecoverable. Consequently, combining these fees with those quantities billed by Mr. Yetter, and performing the necessary 25% reduction, Plaintiff improperly requests recovery of $19,281.00 in fees that fall outside the purview of the fee award. Plaintiff's award will be reduced accordingly.

### D. Plaintiff may only recover fees that reasonably result from prudent, responsible, and accurate billing practices.

Finally, Defendants object that Plaintiff's recovery should be reduced, because its fee affidavit reveals poor work and billing judgment. *Doc. 823* at 14-23. Primarily, Defendants argue that the hours billed by Plaintiff are excessive. *Id.* at 15-19. Further, Defendants contend that Plaintiff should not recover fully for its time spent in

interoffice conferences, performing non-legal tasks and traveling, or for graphics work performed by DOAR, and excessive document review by Black Letter Discovery. *Id.* at 19-23. The Court will address each of these objections individually.

First, Defendants express concern that Plaintiff billed excessive hours producing its Motion for Sanctions, and that Plaintiff's practice of block-billing has aggravated this concern. *Doc. 823* at 15-23. The Court begins by noting that a claimant is entitled to the presumption that the lodestar amount reflects a reasonable fee. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). Defendants maintain that the fact that nine individuals,[4] not including experts, worked on this issue, "undoubtedly led to a plethora of duplicative work and unnecessary billing[,]" and underscores that the approximately 2,000 hours spent on this issue were excessive.[5] *Doc. 823* at 17.

The Court agrees that these bare facts, without additional context or explanation, do suggest Plaintiff's billing was excessive. However, the issues addressed in Plaintiff's Motion for Sanctions "involved neither a fact pattern easily unraveled, nor a legal argument commonly made." *Doc. 820* at 4. And, as attorney George Sanders explains, "efforts were not duplicative; the work was assigned as sub-projects where doing so was the most efficient manner of resolving the issue. . . . some lawyers focused on the

---

[4] Those nine individuals include attorneys Tom Bacon, Brian Coughlin, George Sanders and John Yetter, paralegals Danielle Gorrell, Juan Estrada, and Charmala Anderson, law clerk Sukhmanjit Kaur, and legal contractor Sam Joseph. *See doc. 820-7*.

[5] As an example, Defendants state that each of Plaintiff's lawyers "separately billed time to 'research' applicable law relevant to its Sanctions Motion. . . amount[ing] to $33,195." *Doc. 823* at 17.

document review while other[s] focused on the legal and technical issues. Managing the case another way would have only caused a slower pace and negatively impacted judicial economy." *Id.* at 18. Therefore, considering the complexity of the issues and the thousands of documents involved, the Court does not find that Plaintiff billed excessive hours, generally.

Nevertheless, the Court recognizes the legitimacy of Defendants' concern regarding Plaintiff's practice of block billing, and agrees that "the use of billing practices that camouflage the work a lawyer does raises suspicions about whether all the work claimed was actually accomplished." *Doc. 823* at 18 (citing *Robinson*, 160 F.3d at 1284). However, Plaintiff has greatly reduced the Court's suspicions by explaining,

> [i]n such situations where billing contained work unrelated to this Motion NMOHC's attorneys have parsed the bills. This parsing removed all work unrelated to the Motion, leaving only 169.90 of 444.80 potential hours. The 274.9 hours removed constituted a 61.9% reduction of the block-billing. . .[and of] the 1,227.1 attorney hours submitted, those 169.9 parsed from blocked billing amount to only 13.8% of the total proposed sanction.

*Doc. 820* at 19.

Because Plaintiff reduced its block bills by 61.9% on average in the parsing process and has repeatedly affirmed that each individual rendered estimates conservatively, the Court does not find that a general percentage reduction is necessary to avoid excessive billing here.

Even so, the Court distinguishes this general finding from its finding tailored to the

9

block billing entries of Charmala Anderson and Juan Estrada. It appears that Ms. Anderson and Mr. Estrada worked as paralegals at the Law Offices of George M. Sanders ("The Sanders Firm") during the relevant billing period, but discontinued employment with The Sanders Firm prior to the firm's effort to parse the block billing. *Doc. 820-1* at 3. Defendants, correctly, contend that attorney John Yetter, who parsed Ms. Anderson's and Mr. Estrada's bills based on his own estimates, cannot "reasonably estimate the amount of time that two <u>former</u> paralegals spent on a particular task on any given day more than a year ago." *Doc. 823* at 18-19. Although Mr. Yetter states, "[a]s part of my employment I oversee work done by paralegals, [and] I am involved in assigning work to these employees, overseeing its completion and reviewing their billing[,]" the Court concludes that Mr. Yetter was very occupied with the Motion for Sanctions himself, which impeded his ability to monitor Ms. Anderson and Mr. Estrada so closely as to identify and remember the hours they worked on a distinct issue while they juggled several tasks. *Doc. 820-1* at 12.

Therefore, the Court does not accept that Mr. Yetter was able to accurately parse the billing hours of other employees, long after the work was performed, and without consulting the employees themselves. As a result, Plaintiff cannot properly recover for those block-billed entries made by Ms. Anderson and Mr. Estrada, constituting 15.50 hours and 29.20 hours billed at a rate of $110 per hour, respectively. *Doc. 820-1* at 12; *see Robinson*, 160 F.3d at 1284-85 ("[A] district court does not abuse its discretion in

reducing a plaintiff's fee request when the request is based on time records that are. . . imprecise."). Therefore, after performing the necessary calculations, the Court concludes that Plaintiff's award shall be reduced by an additional $3,540.14.

Moving to Defendants' second objection, Defendants contend that Plaintiff cannot properly recover 75% of its normal rate for time spent in interoffice conferences, performing non-legal tasks, and for experts' unproductive travel time. *Doc. 823* at 17-24. "Some courts have held that routine and ministerial services, i.e., telephone conversations, correspondence and attending meetings, should be compensated at a lower rate than 'truly legal services' such as litigation, settlement negotiations, research, and document drafting." *In re Jensen-Farley Pictures, Inc*, 47 B.R. 557, 584 (Bkrtucy. D. Utah 1985)(internal citations and quotations omitted). However, in the circumstances of this case and this sanction, the Court finds this "an unwarranted distinction." *Id*.; *see also In re Automobile Warranty Corp.*, 138 B.R. 72, 78 (Bkrutcy. D. Colo. 1991). Therefore, the Court refrains from reducing Plaintiff's fee award based on this distinction, and overrules this objection.

Similarly, Defendants object that certain work performed by attorneys should have been performed by paralegals, and that such work should therefore be recovered at a lesser rate. *Doc. 823* at 20. Particularly, Defendants argue that Plaintiff should recover at a lesser rate for certain work performed by attorneys John Yetter and Thomas Bacon. *Id.* Mr. Yetter, an attorney with 21 years of experience, billed .9 hours at a rate of $285

11

per hour to "format a case notebook for searchability; Send to printer in New Mexico; Email TJB pickup instructions, address and invoice." *Doc. 820-3 at 52.* Mr. Bacon, an attorney with five years of experience, billed 6.6 hours at a rate of $200 per hour to "continue adding citations to court record and additional exhibits for fact section" and "finaliz[e] all exhibits[.]" *Doc. 820-3 at 93.*

The Court finds that "the allocation of responsibility between partners, associates and paralegals with respect to most tasks is a function of many variables and that there is no uniform approach that applies in all instances. It is an inherent part of an attorney's tasks to determine what types of expertise should be brought to bear on a legal problem, and absent a clear misallocation of resources, this Court is unwilling to second-guess counsel's judgment." *In re Jensen-Farley Pictures, Inc.*, 47 B.R. at 584 (internal quotations and citations omitted). However, "[t]his argument does not hold true. . . . when a firm routinely utilizes legal employees to perform tasks of a purely non-legal nature." *In re Automobile Warranty Corp.*, 138 B.R. at 78.

Therefore, the Court shall defer to counsel's judgment regarding the hours billed by Mr. Bacon, whose work with citations and exhibits likely required the application of his judgment and legal skills. However, the Court will not do so regarding the time billed by Mr. Yetter to perform the entirely non-legal task of creating a binder, and coordinating its printing and pickup, a clear misallocation of resources. *See id.* ("Non-legal work performed by a lawyer which could have been performed by less costly non-

employees should command a lesser rate.").

Because these tasks do not require the expertise of a lawyer, especially not the twenty-one years expertise possessed by Mr. Yetter, it should have been performed by a non-lawyer at The Sanders Firm, and billed at a lesser rate. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10 ("It is appropriate to distinguish between legal work, in the strict sense, and….clerical work. …which can often be accomplished by non-lawyers. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it."). Therefore, the Court finds that Plaintiff should recover for this work at a rate of $90 per hour, the lowest billing rate of any of the nine workers that billed with The Sanders Firm. *Doc. 820-3* at 55. Therefore, after performing the necessary calculations, the Court finds that Plaintiff's award shall be reduced by an additional $131.63.

On a related note, Defendants object, stating the Court should not award travel costs to Plaintiff, because "[t]he general rule is that no compensation is due for nonproductive time." *Doc. 823* at 22 (citing *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980). Aside from the fact that *Copeland*, a non-binding case, fails to mention travel time generally, or to more specifically discuss whether travel time qualifies as "nonproductive time," the Tenth Circuit has previously held that it is proper for an attorney to recover travel costs at 25% of the attorney's standard hourly rate. *Smith v. Freeman*, 921 F.2d 1120, 1121-22 (10th Cir. 1990). Here, Plaintiff only seeks to recover

25% of the value of its attorney's travel time, and this quantity has been reduced an additional 25%, since Plaintiff has only been awarded recovery of 75% of its total fee. *Doc. 820* at 25; *doc. 820-7*. As a result, the Court finds this recovery of travel fees to be perfectly reasonable. Nevertheless, Defendants also contend that the Court should not award costs to Plaintiff for its experts' travel time. *Doc. 823* at 22. Defendants provide no precedent to support their argument that expert travel fees should not be fully recoverable, nor has the Court found any cases directly on point to suggest that Defendants' argument has merit. As a result, the Court overrules this objection.

Turning to Defendants' next objection, Defendant posits that Plaintiff is not entitled to recover $61,821 in costs associated with its expert, DOAR, Inc.'s, creation of litigation graphics, which were used at the sanctions hearing. *Doc. 823* at 20. Defendants claim, "[t]he excessiveness of this expense cannot be overstated," citing to the fact that ten individuals worked on designing the graphics, and two experts from New York attended the sanctions hearing. *Id.* at 20-21.

Although the Court agrees that these efforts were rigorous and costly, it finds that they were vital "to explain highly technical aspects of the case in the short time frame of the hearing." *Doc. 820* at 23. In fact, the demonstratives were so useful that the Court thanked Plaintiff for its preparedness and requested copies of the demonstratives to be used in its deliberation and referenced them in the argument. *Doc. 820* at 23. Considering the complexity of the relevant issues during the sanctions hearing, and the

effectiveness of the work performed by DOAR in explaining those issues to the Court in a timely manner, the Court finds that such fees are not unreasonably excessive, and therefore overrules Defendants' objection.

In their final objection, Defendants argue that Plaintiff is not entitled to fees associated with excessive and unnecessary document review performed by Black Letter Discovery. *Doc. 823* at 21. First, Defendants contend that Plaintiff should not recover for these fees, because it does not establish that review performed by Black Letter Discovery was necessary. *Id.* The Court disagrees. For, Plaintiff explains,

> Black Letter Discovery. . . . analyzed documents to test [Plaintiff's] claims, created and executed searches to analyze productions for missing information, compared the Mike West and Dr. Dava Gerard email productions and performed quality control of the material ultimately found by DriveSavers. Without this contribution [Defendants'] negligence may not have been found in a timely manner, and the prosecution of the Motion would have been nearly impossible. The use of Black Letter Discovery served to reduce the ultimate monetary request, as their hourly rates are less than any attorney at the Sanders Firm.

*Doc. 820* at 22-23. As a result, the Court concludes that Plaintiff has met its burden to show that the review performed by Black Letter Discovery was reasonably necessary.

Second, Defendants argue that, even if Black Letter Discovery's contributions were necessary, the 830 hours that it billed are excessive. *Doc. 823* at 22. In response, the Court finds it impossible to thoroughly review Black Letter Discovery's billing in order to determine its reasonableness, because the only documentation provided to the Court is a single page invoice for $39, 816.80, in which tasks are billed in blocks as large

as 507.5 hours.  *Doc. 820-5; see Flying J Inc. v. Comdata Network, Inc.*, 322 F. Appx. 610, 617 (10th Cir. 2009) (Block billing is "strong evidence that a claimed amount of fees is excessive.").  Without more, the Court cannot determine exactly what work was performed, or whether it was performed efficiently.

Therefore, the Court reduces the fees billed by Black Letter Discovery by 25% in order to account for potential excessiveness and vague billing practices.  *See Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995)(finding that the District Court's comprehensive 35% reduction of Plaintiffs' recovery where "plaintiffs' time records include unspecified or inadequately specified 'review' time, excessive travel time, unnecessary and duplicative time spent in conference calls, meetings, and hearings" proper.); *Kirsch v. Fleed Street, Ltd.*, 148 F.3d 149 (2nd Cir. 1998) (affirming district court's decision to reduce the number of billable hours by 50% for excessiveness and an additional 20% for vague or inconsistent entries);  *Sata GmbH & Co. KG v. Hauber*, No. 17-0294, slip op. (N.D. Okla. Aug. 7, 2017) (reducing hours billed by 70%).  Having considered the 25% reduction already calculated by Plaintiff, the Court will reduce Plaintiff's award by an additional $7,465.65.

IV.     CONCLUSION

In sum, in consideration of the foregoing, the Court awards Plaintiff fees in the amount of **$499,335.99**.


**IT IS SO ORDERED.**

_____
MARTHA VÁZQUEZ
United States District Judge